## BAIRD v. EFLOW INV. CO. et al.

No. 4875. Decided June 26, 1930. (289 P. 112.)

*Van Cott & Moreton,* of Salt Lake City, for appellant.

*B. L. Liberman* and *Willard Hanson,* both of Salt Lake City, for respondents.

CHERRY, C. J.

This is an action for damages for alleged fraud arising out of a contract for the exchange of real estate. A trial by

jury was had. At the conclusion of the evidence the court directed a verdict for the defendants. From the judgment on the verdict, the plaintiff appeals.

The plaintiff, a farmer and stock grower, had a ranch in Montana worth, as he claims, $50,000. He desired to dispose of it and employed the defendants Baird Realty Inv. Co. and W. Eccles Baird as brokers to find a purchaser for it. J. A. Millecam, who is named in the complaint as a defendant, but who was not served and who made no appearance in the action, had pending negotiations for the purchase of the Prescott apartments in Salt Lake City with the defendants Eflow Investment Company and Nat Wolfe.

The brokers brought Millecam and the plaintiff together to accomplish an exchange of Millecam's interest in the Prescott apartments for the plaintiff's Montana ranch, and such an exchange was agreed to and made. It was during the negotiations for this exchange that the alleged fraudulent representations upon which the action is based were made. The interest of Millecam in the Prescott apartments, which was transferred to the plaintiff, consisted of an executory contract of purchase with Eflow Investment Company. Negotiations for the sale of the Prescott apartments by the owner thereof to Millecam, and of Millecam's exchange of his interest therein for the plaintiff's Montana ranch, were conducted in part during the same time. The exchange with the plaintiff on the part of Millecam consisted of his assigning his contract for the purchase of the apartments to the plaintiff. No fraud or wrong is claimed on account of the nature of the interest or title to the apartments, which was transferred to the plaintiff by Millecam. It was alleged that the defendants, acting in concert, confederated and conspired together to cheat and defraud the plaintiff out of his ranch. The substance of the alleged fraudulent acts was false representations made to the plaintiff by the brokers concerning the value, rents, taxes, net income, etc., of the apartments.

The transaction culminated by Millecam obtaining the title and possession of the plaintiff's Montana ranch. The plaintiff obtained the executory contract to purchase the Prescott apartments, which he afterwards exchanged with the Eflow Investment Company and Wolfe for what is called the Snell apartments. No complaint was made of any wrong or fraud perpetrated in connection with the latter exchange, although it did appear that the plaintiff, after being in possession of the Snell apartments for a few months, was ousted from possession and lost his interest therein.

The action was brought to recover damages as for fraud, and was prosecuted against Eflow Investment Company and Nat Wolfe, who, for convenience, will be referred to as the owners of the Prescott apartments, and the Baird Realty Investment Company and W. Eccles Baird who will be referred to as the brokers. Separate answers were filed, and the case was separately defended by the owners and brokers.

There was no claim or proof that the owners themselves made any false representations to the plaintiff. It was affirmatively proved and not denied that the brokers were not the agents of the Eflow Investment Company or Wolfe in the negotiations of the contract as between the owners of the Prescott apartments and Millecam, or in the negotiations between Millecam and the plaintiff for the exchange between them. It did appear, however, that at the conclusion of the transaction between the owners of the Prescott apartments and Millecam, the former agreed to and did pay to the brokers a commission of $2,000.

It was clear that the owners of the Prescott apartments were not concerned and did not participate in the transaction between Millecam and the plaintiff for the exchange in controversy. There was no proof of any fact or circumstance tending to show that the owners of the Prescott apartments conspired or confederated with the brokers or in any manner acted with or aided them in inducing the plaintiff to enter into the exchange agreement with Millecam.

There are other reasons, argued in their brief, why the verdict in favor of the owners of the Prescott apartments was properly directed, but what has been stated is ample ground for such action.

With respect to the defendants who acted as brokers in the transaction, the case involves other questions. It was established by the plaintiff's evidence that in negotiating the exchange between the plaintiff and Millecam the brokers acted for both parties. There was proof to the effect that the brokers represented to the plaintiff that the Prescott apartments were well worth $125,000 (had been appraised at $115,000) ; had a monthly income of $1,105 per month; that the annual expenses did not exceed $3,084, and that the taxes had been reduced $300 or $330; that Millecam owned an interest in the apartments subject to an indebtedness of $75,000; that his equity was worth $50,000, which he was willing to exchange for the plaintiff's ranch. Thereafter Millecam went to Montana and examined the plaintiff's ranch and the plaintiff came to Salt Lake City and examined the Prescott apartments. On October 23, 1926, the plaintiff signed an agreement to exchange the properties and left it with the brokers. It was not signed or executed by Millecam. On October 25th the brokers wrote a letter to the plaintiff which the plaintiff received about two days later, in which it was stated that the expenses of the Prescott apartments during the preceding twelve months was $3,084.74, and that the gross income was $12,300 per year, as previously represented. The plaintiff testified that on November 1, 1926, he stated to one of the brokers that he wanted to withdraw from the agreement and was told that if he did Millecam would sue him for damages. On January 3, 1927, the plaintiff wrote to the brokers stating, among other things, that he was desirous of making the trade. It was understood between the parties that Millecam depended upon raising some money by mortgage upon the plaintiff's ranch in order to complete his contract with the owners of the Prescott apartments. The plaintiff co-operated with

Millecam for this purpose, by executing a deed to Millecam for his ranch on January 22, 1927, and afterwards aiding Millecam in getting a loan thereon from the Federal Land Bank. On February 18, 1927, the assignment of Millecam's contract for the purchase of the Prescott apartments was made to the plaintiff and on March 7, 1927, following, the plaintiff exchanged his interest in the Prescott apartments with the owners thereof for the Snell apartments. On October 13, 1927, this action was commenced.

There was evidence offered by the plaintiff that the reasonable value of the Prescott apartments was around $82,-000, and that the plaintiff's Montana ranch was worth around $60,000. The defendants produced evidence that the Prescott apartments were of the value of $95,000 to $125,-000, and that the plaintiff's ranch was worth $20,000 to $30,000.

The question to be decided is whether upon proof of the foregoing facts the plaintiff was entitled to have his case as against the brokers submitted to the jury.

It will be noticed that there was no proof that any representation was false except as to the amount of the income and the value of the Prescott apartments. Concerning the income, according to plaintiff's evidence, it was first represented to be $1,105 per month, which would be $13,260 per year. Later, and before the plaintiff had become bound to convey and long before he had conveyed his ranch away, he was informed in writing that the annual income was $12,300. It is not claimed, and there is no proof to show that the last statement was untrue. Thereafter the plaintiff wrote that he was desirous of making the trade, and later made it without any objection whatever that the income of the apartments had been misrepresented.

With respect to the representations as to value, the case, as made by the plaintiff, was that the brokers had represented the property to be worth $125,000, whereas in the

opinion of the plaintiff's witnesses it was worth around $82,000.

It is the general rule that misrepresentations as to value do not ordinarily constitute fraud, as they are regarded as mere expressions of opinion or "trader's talk" involving matter of judgment and estimation as to which men may differ. 26 C. J. 1215. *Campbell* v. *Zion's C. H. B. & R. E. Co.*, 46 Utah 1, 148 P. 401; *Stuck* v. *Delta Land & W. Co.*, 63 Utah 495, 227 P. 791. For such misrepresentations to be actionable they must be coupled with concealment of material facts or with artifice or misrepresentation used to prevent the hearer from learning the truth, or be made under such circumstances as to indicate that the hearer will rely on them, as when the truth of the speaker's statement is a controlling element of the transaction, or because confidential relations exist. But here nothing of the kind appears to take the case out of the operation of the general rule respecting such representations. The plaintiff knew that the brokers were acting for both sides to the trade. He, with his wife, made a trip to Salt Lake City from Montana for the purpose and did inspect the apartments. He consulted a banker in Montana, who he said was his business adviser, concerning the trade before he made it. He also consulted a lawyer of his own selection in Salt Lake City concerning the legal phases of the matter. He inquired repeatedly about the details of the income and expenses of the apartments, and was furnished a true statement thereof before he completed his contract. There was nothing done by the defendants to prevent the plaintiff from making the fullest inquiry and investigation concerning the value of the apartments. That the plaintiff and the individual brokers were cousins, and that the plaintiff was a farmer and the brokers were real estate dealers in the city appeared in evidence, but we do not see how these facts are of any consequence. Upon the whole there was nothing in the evidence to characterize the representation as to value as anything more than the expression of

the opinion of those who made it, and as such, the representation, if untrue, is not actionable. In a very similar case by a trader of land against his broker for false representations as to value a judgment for the plaintiff was reversed, and judgment directed for the defendant. *Subke* v. *Gonder*, 97 Kan. 414, 155 P. 793.

We agree with the trial court that the plaintiff failed to make out a case against either of the defendants, and that the verdict was correctly directed for all the defendants.

Judgment affirmed.

STRAUP, ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.