323 P.2d 712

A. Fred FLEMING, Plaintiff and Respondent,

v.

FLEMING–FELT COMPANY, a Utah corporation, and Joseph H. Felt and Marie Felt, Defendants and Appellants.

No. 8732.

Supreme Court of Utah.

March 31, 1958.

Macoy A. McMurray, David L. McKay, H. R. Boyer, Salt Lake City, for appellants.

Joseph Y. Larsen, Jr., Salt Lake City, for respondent.

CROCKETT, Justice.

This is a suit by A. Fred Fleming to extricate himself from difficulties arising out of a merger of his auto supply business with that of the defendants, Joseph H. and Marie Felt. Plaintiff based his action upon: (1) claims of fraud by the defendants in inducing him to enter into the transaction, and (2) alleged breaches of their contractual obligations thereafter. The trial court found for Fleming on both issues. Defendant's appeal, insisting that the evidence does not support either the finding of fraud or that they were at fault in causing the disruption of the business relationship. In order to test their contentions we review the facts disclosed by the record, and where there is conflict, in the light most favorable to plaintiff who prevailed below.[1]

The Felts had for more than 20 years operated a successful auto parts supply business in Salt Lake City. In 1953, they were thinking of tapering off active business and retiring. Understanding that Fleming, a younger man, was successfully operating a similar business in Provo, the defendants investigated his character and reputation, and being satisfied therewith, contacted him with a view to getting him to come into their business to actively manage it and eventually buy them out under some plan that would pay them an assured monthly income.

In the preliminary conversations the Felts mentioned the value of their business as being about $18,000, while the value of Fleming's business was referred to as about $13,000. The parties arrived at an agreement in principle that they would merge their respective businesses, which was done September 1, 1953, leaving the details to be worked out later in a formal contract.

Pursuant to the above plan Felts had their attorney prepare a draft of a contract which was submitted to Fleming. He made various objections, including objections to price and terms of forfeiture in case of his default. After two further drafts had been submitted and rejected by him a contract acceptable to all was agreed upon and executed. Insofar as material here it pro-

1. Buehner Block Co. v. Glezos, 6 Utah 2d 226, 310 P.2d 517.

vided in substance: that their respective businesses would be merged in a corporation to be known as Fleming-Felt Corporation and operated as one business; that the parties would receive stock approximately in proportion to the value of their interests; that Fleming could buy the Felts out for $33,000; and that the Felts were to retain legal title to their stock in the corporation and exercise all voting rights until they were paid out in full.

On behalf of Fleming it was covenanted that he was to be the general manager of the business, so long as certain conditions were met: (a) that he continue to manage the business in good faith for the benefit of the corporation; (b) that its obligations were being met; (c) that it did not show a loss for any two consecutive years; and (d) that he met his payments to Felts under the contract.

On behalf of the Felts it was provided that so long as either of them kept working they would receive the same aggregate salary as Fleming, which should be not less than $200 per month; that while either was so employed Fleming could, but was not obliged to, make payments on the purchase price; that after both of the Felts retired Fleming was to pay them at least $200 per month on the purchase price, plus 6% interest on the balance and the contract recited that he could not pay more than 30% of the total price in any one year. Also included was a forfeiture clause:

that in case of default by Fleming for more than 60 days, all payments theretofore made would be subject to forfeiture as liquidated damages, and his rights under the contract cancelled.

The venture seemed to work fairly well for about 16 months. At any rate, there was no surface explosion until January, 1955. One evening after a dinner, ostensibly for social purposes, at the Felts' home, Mr. Felt said he was calling a directors' meeting, whereupon he charged Fleming with mismanagement and losing money for the company. Mr. Fleming took exception to this and an argument ensued. Mr. Felt then proposed to reduce Fleming to sales manager and restore himself to general manager of the business, which purportedly was done. Such action was not official because it was never recorded in the company's regular minute book and Fleming continued to act as manager.

In March 1955, as a result of growing friction between the parties Fleming said they could not work together. For this reason and other considerations, including Mr. Felt's impaired health, the latter left. Shortly thereafter Fleming purported to discharge Mrs. Felt, who had been doing the book work. The next month a Board of Directors Meeting was held at which Mrs. Felt was rehired and Mr. Felt was given full control of the company, Mr. Fleming being made vice president "with

such duties as may be assigned to him," thus having the effect of removing him as manager. Soon thereafter Fleming twice offered to make his payment of $200 on the purchase price, which was refused both times. Under advice of counsel he then tendered a substantial payment of $5,000 on the purchase price which was also refused. Because of the existing dissension between the parties the situation seemed to be impossible, and on June 8, 1955, the directors accepted Fleming's resignation. It was then and upon the foregoing fact situation that Fleming tendered back his stock in the corporation and sought recision of the contract for fraud, or in the alternative, damages for breach thereof by the Felts.

The attack the defendants here make upon the judgment is directed almost entirely at the finding on the issue of fraud. The argument advanced by Fleming proceeds thus: the fraud claimed is that the Felts did not in good faith intend to retire from the business, and that they falsely so represented to Fleming, so they could use him for their own purposes in operating the business; and that while they pretended to make him manager, this was only ostensible because, through their ownership of a majority of the stock, they actually had and continued to maintain control. He argues that their covenants were thus illusory in that they did not confer upon him the rights Felts represented he was getting; and further that because of such fact the contract was completely one-sided in allowing Felts all of the privileges and placing him in such an impossible position that the contract was unconscionable and therefore "illegal," which view the trial court adopted.

In respect to the issue of fraud we are constrained to agree with the defendants that the trial court was in error. One of its essential elements is the knowing false representation, of a presently existing material fact,[2] which must be proved by clear and convincing evidence.[3] This presents difficulties when it requires proof of a state of mind: in this instance a preconceived design on the part of Felts not to keep their promise to retire and turn over the management of the business to the plaintiff. It is not to be gainsaid that under some circumstances it may be possible to show that a promisor has a preconceived determination not to perform.[4] But the mere fact that the Felts had not performed their promise and retired at the time the difficulties arose is not sufficient to do so.[5] The contract placed no limitation within which they had to retire and the evidence is not inconsistent with the idea that they initially

2. Pace v. Parrish, 122 Utah 141, 247 P. 2d 273.
3. Ibid.
4. See State v. Bruce, 1 Utah 2d 136, 262 P.2d 960.
5. Hull v. Flinder, 83 Utah 158, 27 P.2d 56.

intended to keep their agreement to retire and the provisions in regard to payments to them were plainly purposed to assure them some continuous monthly income, whether they retired or continued to work in the business.

■■ As to the other facet of the allegation of fraud, relating to the degree of control Fleming was to have in managing the business, there is the further consideration that his rights were plainly spelled out in the written documents, the contents of which he was entirely aware. The fact that the contract may have placed him in a position of disadvantage, or even hardship, will not support a charge of fraud in the inducement of the contract; nor relieve him from his obligations thereunder.[6] This matter of his prerogatives in management is related to the next proposition to which we address our attention: the breach of contract. Upon it we conclude that the judgment should be affirmed based upon the precept that the judgment should be sustained if the findings support it on any correct legal theory.[7]

■ Even though the Felts had control of the corporation there is no reason why they could not, by contract, bind it to hire Fleming as a manager under any conditions and for any period the parties desired. Thus, under such contract Fleming acquired the right to be general manager. However, the finding was made that notwithstanding the fact that, "plaintiff [Fleming] kept or offered to keep and to perform all of the provisions of said agreement" the defendants "refused to permit plaintiff to carry out his duties as general manager * * *" and terminated his status as such, "without any reason or cause, provocation or excuse and [his duties] were wrongfully transferred * * * to * * * Joseph H. Felt."

The trial court correctly regarded the above mentioned conduct of the Felts as a substantial breach of their contract which, in practical effect, forced Fleming out of the transaction by rendering it impossible for him to continue performance. This provided a foundation for excusing him from further performance and for awarding him damages for breach of contract by the Felts.[8]

■ The question then became: what damage was Fleming entitled to? He made an extensive claim for general damages alleged to have been suffered by discontinuing his own business and entering into this transaction, and also sought payment for the inventory he had placed

6. See Ephraim Theater Co. v. Hawk, Utah, 321 P.2d 221.
7. See LaHue v. Coca Cola Bottling Co., 50 Wash.2d 645, 314 P.2d 421.

8. See Sprague v. Boyles Bros. Drilling Co., 4 Utah 2d 344, 294 P.2d 689.

therein. The trial court properly allowed the latter but rejected the former. There was no proof that his wages or income would have been greater than he received from Fleming-Felt Corporation during the period; nor that he otherwise suffered damage.

 Inasmuch as the trial court determined that the disruption of the business arrangement resulted from breaches by the Felts, it was proper to justify Fleming's withdrawal and to award him damages, which the trial court found to be $13,512, based on the inventory he had put into the business. However, due to the fact that the charge of fraud in the inception of the contract cannot be sustained, it was error to allow interest thereon from August 31, 1953, the date his property was placed in the business. From that date until the termination of his services in June of 1955, the parties had placed their respective properties in the business for their mutual purpose, and each was receiving salary from the business and had the potential of getting his proportionate share of any profits. There is no basis upon which either party could demand interest on the money such property represented during such operation. It was only after the breach by the Felts, and the expulsion of the plaintiff, which occurred in June of 1955, that he was entitled to the value of his property. Therefore interest can only be charged after that date. The judgment must be modified accordingly and is otherwise affirmed. The parties to bear their own costs.

McDONOUGH, C. J., and WADE and HENRIOD, JJ., concur.

WORTHEN, J., concurs in the result.