338 P.2d 118

**Edmund E. GREENWELL, Plaintiff and Respondent,**

v.

**R. C. DUVALL, Defendant and Appellant.**

**No. 8961.**

Supreme Court of Utah.

April 23, 1959.

Nielsen & Conder, Salt Lake City, for appellant.

Howell, Stine & Olmstead, Richard W. Campbell, Ogden, for respondent.

WADE, Justice.

Defendant R. C. Duvall appeals from a judgment in the District Court of Weber County for $6,748.14 dated August 25, 1958, as damages from false and fraudulent representations by him to plaintiff Edmund E. Greenwell about December 21, 1952, which the court found induced Greenwell to loan $5,000 to the Duvall Company, a mining corporation. About a year later the Duvall Company commenced liquidation. The court allowed a recovery of the full $5,000 loaned plus interest, less a $336 liquidation payment.

When the loan was made defendant was President and Manager of the Ogden First Federal Savings & Loan Association. The plaintiff Greenwell had on deposit in that Association about $5,000. The representations were made and the loan consummated at the Association's place of business after about 15 minutes' conference.

Duvall was the President and main stockholder of the Duvall Company, a corpora-

-tion which operated a gold mine northwest of Snowville beyond the Utah-Idaho boundary line on the side of the Black Pine Mountain. During 1943 through 1949 Duvall and others spent large sums of money prospecting and planning for commercial mining of this property. In January of 1950 Roger Pierce, an engineer, made a written report to Duvall that there was available 200,000 tons of provable and probable ore reserves with a gold content value of from $4.20 to $50 per ton and averaging about $7 per ton. He estimated the mining and milling costs at a total of $3.28 per ton with a 90% recovery, which would leave a net profit of $3.02 per ton or a total of $604,000. When the Duvall Company was formed early in 1950, these mining claims, with accumulated equipment, were turned over to it. Duvall and associates invested substantial sums of money in the company and additional money was borrowed. Under the superintendency of Miles P. Romney, a mill was constructed and commenced operations about the first of September, 1950.

The 1950 operation was unsatisfactory. The recovery was only about 32% as compared with the expected 90%, and the gold content was low, while the operating costs were high. This necessitated extensive changes during the winter of 1950 and 1951, which required additional borrowing. From April, 1951, to December of 1952, the gold recovery was increased to about 62%. The company lost money on all its operations throughout the seasons of 1950, 1951 and 1952. At the end of the operation of 1952, further changes were recommended, and in order to make such changes, the company borrowed more money. The defendant had invested over $63,000 in this venture prior to or during 1950, and he made an additional loan to the company of $5,000 shortly prior to the loan by the plaintiff.

The court found that the defendant by false and fraudulent representations induced plaintiff to advance to the Duvall Company as a loan $5,000. Such fraudulent representations were as follows:

"(A) That said Duvall Mining Company had, as a result of diamond drilling and tunnelling, blocked out 300,-000 tons of ore containing Gold Ranging in value from $4.20 per ton and less, to as high as $50.00 per ton when in truth and in fact Defendant well knew that only 200,000 tons of proven and probable ore had been blocked out.

"(B) That Defendant had received an offer to buy said mine for $2,000,-000.00 which offer had been refused because said mine was worth more than that, when in truth and in fact Defendant well knew that no offer whatever had been received for the purchase of said mine.

"(C) That said mine was then in fine condition, when in truth and in fact

Defendant well knew that said mine was not in fine condition, either financially or in good mechanical operating condition.

"(D) That it would be impossible for any investor to lose one cent of money, as there was more than enough ore blocked out to pay all the notes with interest, when in truth and in fact said mining operation was then costing more than was being received therefrom, and there was not sufficient income from production to pay the obligations owing by the corporation or the costs of operation."

For a reversal of this judgment the defendant makes three contentions which require our consideration: (1) The evidence of the fraudulent representations is not clear and convincing. (2) The representations found by the court were not actionable. (3) The plaintiff failed to join his wife, who is an indispensable party to this action.

 Before discussing whether the evidence supports the findings of fact and judgment we note that a number of Utah cases contain statements requiring clear and convincing evidence to establish fraud.[1] Most of such cases involve the setting aside or modification of a written instrument. In order to do that, whether on the grounds of fraud, mutual mistake, lack of mutuality or for other reasons the grounds must be established by clear and convincing evidence. Such cases have little weight in establishing that a fraudulent representation which does not involve setting aside or modifying a written instrument must be established by clear and convincing evidence. Many cases hold that only a preponderance of the evidence is necessary to prove a fraudulent representation which does not involve the setting aside or modification of a written instrument.[2] Here we are not required to determine that question, for the evidence is amply clear and convincing to support the judgment if such is the degree of evidence required. So we express no opinion on that question.

Defendant claims that the evidence of fraud is not clear and convincing because (1) plaintiff, after stating in his deposition that the original complaint fully stated his charges, amended his complaint to add others; (2) plaintiff changed his testimony; and (3) the trial court rejected some of plaintiff's claims.

The amendments merely add more details and add that defendant knew that the representations were false. There is no con-

1. Pace v. Parrish, 1952, 122 Utah 141, 247 P.2d 273 and cases therein cited. This is not a case to modify or set aside a written instrument but the cases cited therein are.

2. See 37 C.J.S. Fraud § 114, p. 426; 24 Am.Jur. 118, Fraud & Deceit, Sec. 278.

flict between the original and the amendments, and in any event, the attorney drew the pleadings and they do not purport to allege all the details. Plaintiff, particularly in his deposition, denied that defendant had made some alleged misrepresentations. In some instances he gave a slightly different version of what was represented; usually the denials were of immaterial matters and generally the plaintiff's later versions were not necessarily in conflict with the previous statements. Other denials were due to a different approach to the subject or to a failure to understand the question. In some instances the plaintiff's testimony was different from the allegations of his complaint which largely accounts for the trial court's failure to find the facts as alleged. The representations were made December 21, 1952, the deposition taken April 28, 1955, and the trial occurred June 18, 1958. It would be unusual with such a lapse of time if plaintiff's testimony were always consistent under skilled cross-examination.

In view of the surrounding facts and circumstances, the opposite claims of plaintiff and defendant and plaintiff's actions in response to such representations, we cannot hold as a matter of law that plaintiff's evidence of fraud is not clear and convincing. Both parties agree that there was only one interview of about 15 minutes, and at most, not to exceed 25 minutes. Within that short time the deal was closed, plaintiff gave his check for $5,000, and received the company note and a stock certificate. During that time he learned of a company he had practically never heard of before, he was shown some maps, papers and pictures, yet, he closed the deal on the spot without hesitation, further investigation, or time for consideration. It would seem to require more favorable representations than the facts would justify to induce him to make such a hurried and irrevocable investment. Had defendant, as he claims, mentioned that they had encountered disappointing experiences, it seems incredible that plaintiff would have closed the deal without further investigation or deliberation. Only a glowing picture of a fleeting chance to make some money would induce an ordinary businessman to make such an investment so quickly. That such picture was represented to plaintiff by defendant is in full accord with plaintiff's testimony and actions, though contrary to the testimony of the defendant. We conclude that the evidence was sufficient to support the court's findings.

On the actionability of the misrepresentations, defendant argues that the damages suffered did not proximately flow from false statements found by the court because the mining and milling operations throughout the life of the company cost more than was realized therefrom. For that reason he contends that the false rep-

resentation found in (A) was immaterial, for as long as the mining and milling cost more than was realized from the gold mined, the plaintiff's loan would have been lost just the same, whether there was 300,000 tons of ore blocked out or only 200,000 tons. He makes the same argument as to finding (B), claiming that an offer of $2,000,000 for the mine which had been refused would not have saved the loss as long as the operating costs were more than the purchase price of the products.

This argument overlooks the fact that plaintiff lost his money because he loaned money to a losing mining company, and such loan was induced by false representations of facts which indicated that it was a paying business. The argument is also based on the false premise that defendant Duvall not only knew that the company always operated at a loss, of which there is no doubt, but also disclosed that fact to plaintiff. All the evidence indicates that no such disclosure was made and no reasonable mind could find to the contrary. The only evidence that even suggests that defendant disclosed to plaintiff that the company was losing money is the testimony of Duvall that he told Greenwell that it had

some discouraging experiences, which is a far cry from telling him that it had always operated at a loss. This testimony is positively denied by Greenwell, is contrary to his actions in loaning the money on a 15 minute conference and out of harmony with all of the fraudulent representations found by the court. The implications of such misrepresentations found by the court are that the company was making a profit on the operations and only temporarily needed money to finance some changes. So, although the court made no express finding to that effect, such a finding is implicit in the findings made, and we will assume the trial court intended to indicate that such was his version of the facts.

There is some doubt of the actionability of finding (B) concerning the offer of $2,000,000 for the mine and (C) that the mine was in fine condition. It is claimed that such representations are promissory, predictive, mere puffing talk, or the expression of an opinion, and do not involve a representation of an existing fact, which plaintiff was entitled to rely on.[3] This presents a borderline situation which it is not necessary for us to decide because there are fraudulent representations in findings (A)

3. For a discussion of these elements see: Stuck v. Delta Land & Water Co., 1924, 63 Utah 495, 227 P. 791; Baird v. Eflow Inv. Co., 1930, 76 Utah 232, 289 P. 112; Ackerman v. Bramwell Inv. Co., 1932, 80 Utah 52, 12 P.2d 623; Kinnear v. Prows, 1932, 81 Utah 135, 16 P.2d 1094; Hull v. Flinders, 1933, 83 Utah 158, 27 P.2d 56; Campbell v. Zion's Co-Op. Home Bldg. & Real Est. Co., 1914, 46 Utah 1, 148 P. 401; Chapman v. Troy Laundry Co., 1936, 87 Utah 15, 47 P.2d 1054; Taylor v. Moore, 1936, 87 Utah 493, 51 P.2d 222; Rawson v. Hardy, 1935, 88 Utah 131, 48 P.2d 473, and Pace v. Parrish, note 1, supra.

and (D) which are clearly actionable and support the judgment even though the other findings were not actionable. So we express no opinion on that question.

The misrepresentation found in (A) that 300,000 tons of ore had been blocked out, and in (D) that there was more than enough ore blocked out to pay all the company notes with interest, were misrepresentations of existing facts which assured plaintiff that the loan was a safe venture with ample security on which plaintiff was entitled to rely. As previously pointed out, this representation by implication, as the court expressly found in (D), negatives the idea plaintiff knew the company's operations always lost money, for the court found the representations to be false because of that fact. These representations were actionable and the court's finding that they induced plaintiff to make the loan thereby causing the loss is amply supported by the evidence.

█ The finding that at the time of the loan, and at all times since, the company was and is insolvent and unable to pay the amount of said advance, and said stock was worthless is supported by the evidence. The evidence shows that for several years the company had operated at a loss and its only means of continuing operations was by borrowing, and that it was unable to and did not pay its debts.

█ Defendant contends that plaintiff's wife was an indispensable party plaintiff. The company note given for the loan was payable jointly to plaintiff and wife, and the money drawn by his business account check to make the loan was later replaced by funds drawn from a joint savings account. However, the representations which induced the loan were made to plaintiff alone; he made the loan out of his own funds, and he directed to whom the note should be made payable. She had no part in making the loan.

Rule 17(a), Utah Rules of Civil Procedure requires that: "Every action shall be prosecuted in the name of the real party in interest; * * *"

Under the circumstances here disclosed he alone was the real party in interest. She was not induced to act by any fraudulent representations of defendant, nor was she affected by the fraud.[4] If she had any dealings in connection with the transaction it was with her husband, not with defendant. The husband did not assign his claim to her. It is generally recognized, under such circumstances, that she is not an indispensable party to an action in fraud and

---

4. 37 C.J.S. Fraud § 60, p. 344; 23 Am.Jur. 1000, Sec. 181, Fraud and Deceit.

deceit.[5] The facts were different in Evola Realty Co. v. Westerfield, Ky.1952, 251 S.W. 2d 298, relied on by defendant. There the husband and wife were joint purchasers of a home; later they were divorced and he conveyed to her his interest therein, and she sued the prior owner for fraud, which induced the husband and wife to make the purchase. The court held that he was an indispensable party plaintiff because he was equally affected and induced by the fraud to make the purchase. That case is distinguishable from the instant case in that there the husband and wife negotiated the sale together, and both were adversely affected by the fraud, whereas, here the representations were made to the husband alone, he acted on them alone and the wife's dealings were only with her husband.

We have carefully considered all of defendant's other contentions but find no merit to them.

Affirmed. Costs to plaintiff.

J. ALLAN CROCKETT, C. J., concurs.

HENRIOD and McDONOUGH, JJ., concur in result.

WORTHEN, J., heard argument but died before opinion was filed.

5. See authorities cited in note 4 above and Boddy v. Henry, 1901, 113 Iowa 462, 85 N.W. 771, 53 L.R.A. 769; Sandler v.

Elliott, 1957, 335 Mass. 576, 141 N.E. 2d 367.