364 P.2d 7

Grant SHAW and Ila Shaw, husband and wife, Plaintiffs and Respondents,

v.

Rue ABRAHAM and Gloria Abraham, husband and wife, and Mary J. Abraham, Ben Boyce and Gaddis Investment Company, a Utah corporation, Defendants and Appellant.

Mary J. ABRAHAM, Plaintiff and Appellant,

v.

Rue ABRAHAM and Gloria Abraham, Defendants and Appellants,

Grant Shaw and Ila Shaw, Defendants and Respondents.

No. 9421.

Supreme Court of Utah.

Aug. 22, 1961.

_____

1. See Lost Creek Irrigation Co. v. Rex, 26 Utah 485, 73 P. 660.

Olsen & Chamberlain, Richfield, Herbert B. Maw, Salt Lake City, for appellants.

Dwight L. King, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment against Abraham based on fraud, and against Gaddis for negligence in connection with a real estate deal. Reversed, with costs to defendants.

Shaw, through Gaddis, his real estate agency, sought to sell his farm and home, and 65 water shares. He had negotiated with Abraham for about two years. One Boyce, Gaddis' agent was an intermediary.

Abraham insisted on clear title to the water stock, etc. A contract prepared by Boyce said that the "first party * * * sold to second party 65 shares of * * * water stock * * * *clear of encumbrances,* house and .85 of an acre" and that "as security * * * Abraham gives Shaw a second mortgage of $5,000 on Shaw's home and .85 of an acre subject to a first mortgage of $5,850 in favor of Abraham's mother." A deed to some vacant property worth about $700 also was delivered as security, together with an assignment of an interest in a real estate contract worth about $600 or $700.

Abraham insisted on a provision that "there shall be no deficiency * * * against the buyers," and that in case of default the seller would retain title to the security properties, but that the seller "is to have no other recourse against the second party." Abraham also insisted that there would be "no deficiency of any nature." The documents were signed and initialed. Abraham sold the water stock, and turned almost all of the proceeds over to plaintiffs who accepted the same. He mortgaged the Shaw home to his mother. Title thereto had been transferred to him. Then he defaulted on his contract with Shaw and wrote the latter of his inability to meet his commitments.

Abraham's business acumen is not before us and we bear no testimonial to it. However, to his argument that there was no clear and convincing evidence[1] of fraud[2] we subscribe, though not because he says so. Gaddis said the evidence did not establish negligence on its part, and we agree with such conclusion.

■ One contention made claiming fraud is that during the negotiations, Abraham expressed an intention to use the water stock to borrow, but meant to sell it. The written contract reflects no interdiction against his action. It said "this day sold * * * 65 shares of water stock." It is urged that everyone understood it would only be pledged, not sold. We think the contract was clear and that any attempt to vary it by conversations anent thereto occurring prior to the execution thereof, clearly would offend against the parol evidence rule.[3]

Plaintiffs also claim fraud because Abraham promised something in excess of his ability to produce. This might indicate some kind of intention not to perform,[4] but payment of almost all of the $10,000 realized from sale of the water stock is inconsistent with such contention. We cannot conclude without equivocation that *clearly* Abraham had no chance of producing. Some people intend to produce but always do not have the best of chances, relying partly on a hope of acquiring the ability to do so.

■ Real estate agents honestly and fairly must represent and disclose material facts. The record here does not indicate that any such trust was breached. Plaintiff admits he delivered clear title to his property and water stock before payment. Abraham all along insisted on this. Shaw, in admitting it, said he took the deal in order to get his ailing wife to Salt Lake City, instructing Boyce, Gaddis' agent to proceed with it, included in which was the transfer of an unencumbered title.

The complaint that Boyce did not insist on a provision that Abraham could not use the water stock except for security pur-

---

1. Fleming v. Fleming-Felt Co., 7 Utah 2d 293, 323 P.2d 712; Pace v. Parrish, 122 Utah 141, 247 P.2d 273, and cases cited therein.
2. Pace v. Parrish, supra.
3. Williston, Contracts, Sec. 632 (Rev. Ed.1936): "All courts agree that if the parties have integrated their agreement into a single written memorial, all prior negotiations and agreements in regard to the same subject matter are excluded from consideration whether they were oral or written."
4. Williston, Contracts, Sec. 1521 (Rev. Ed.1936).

poses, meets the answer that the plaintiff need not have signed the contract, as is the case with respect to the claim that Boyce was careless in permitting the inclusion of a non-deficiency clause which Abraham required.

The final agreement of the parties said that "if the payments * * * are not made according to the terms * * * then first party is to retain the property and (securities) * * * but the first party is to have no other recourse against the second party." After two years of negotiation, we think that when they finally signed, the case became one calling for application of the parol evidence rule. Boyce apparently informed Shaw at all stages and did not deceive him as to facts, and where the commission here, by agreement was $300, where with some other buyer it would have been 3 or 4 times that amount, it seems unrealistic to conclude that Boyce, for Gaddis, would make two 150 mile round trips and consciously indulge in actionable negligence that might subject him to a damage suit.

We see no evidence of Gaddis' negligence nor any clear and convincing evidence of fraud on the part of Abraham.

WADE, C. J., and McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.