391 P.2d 293

**UNIVERSAL C. I. T. CREDIT CORPORA-TION, Plaintiff and Respondent,**

v.

Rex L. SOHM and Katheryn Sohm, Defendants and Respondents, and Third-Party Plaintiffs,

v.

Richard H. NICKLES, d/b/a Zion Management, Third-Party Defendant and Appellant.

No. 9865.

Supreme Court of Utah.

April 15, 1964.

Crockett, J., dissented.

Barker & Ryberg, Salt Lake City, for appellant.

Keith E. Sohm, Salt Lake City, for respondents.

HENRIOD, Chief Justice:

Appeal from a judgment for damages in an action of deceit based on alleged wilful misrepresentations in connection

with the sale of a new-type electronic stove. Reversed with costs to defendants.

In our opinion the only clear and convincing aspect of this case is that the alleged wilful deceit clearly was *not* proved by a clear preponderance of the evidence.[1] The trial court obviously was convinced that plaintiff should recover, but such conclusion, in our opinion, could not have been arrived at by clear and convincing evidence adduced at the trial, so that the Court's Finding #3 with respect to wilful and intentional deceit appears to be an unwarranted conclusion based on the facts of this case.

To recover, the plaintiff must present facts to demonstrate that Nickles, appliance dealer, and/or his agent intentionally, wilfully, clearly and convincingly practiced a fraud on plaintiffs by way of telling them deliberate lies.

Nickles did not seek out the plaintiffs. The *plaintiffs sought out Mr. Nickles,* at his established home appliance store. They specifically asked to be shown the oven that had been *recommended to them by another couple.* A woman demonstrator waited on them, actually cooked some hot dogs and bacon, which plaintiffs ate, and showed them the file of recipes which was an accessory to the stove. She answered all their questions and generally extolled the virtues of the national product put out by a reputable manufacturer, Westinghouse. Taking plaintiff's own testimony as to what was said, the most that could be asserted is that nothing went beyond mere "puffing," [2] and there was no clear and convincing evidence that this lady demonstrator preyed upon plaintiffs by intentionally telling them lies that could not be detected by a simple reading of the Westinghouse claims included in clear written instructions for use of the oven.

Upon being asked if the oven would cook wholewheat bread by using plaintiffs' own recipe, the demonstrator frankly and in candor told them she did not think so, but that "we use certain recipes," and that she would write to Westinghouse to obtain such a recipe. She also advised that the unit would not cook pancakes without a griddle. Asked if it could be used to put

---

1. Where the issue is fraud, our Court consistently has said it must be proved by clear and convincing evidence. Perhaps another way of stating the rule is that it must be proved by a clear preponderance of the evidence. If it is *clear* and preponderates, presumably it also is convincing, though someone might disagree on technical grounds in an isolated case. Pace v. Parrish, 122 Utah 141, 247 P.2d 273 (1952) and cases therein cited; Fleming v. Fleming-Felt, 7 Utah 2d 293, 323 P.2d 712 (1958); Child v. Child, 8 Utah 2d 261, 332 P.2d 981 (1958); note: In Greenwell v. Duvall, 9 Utah 2d 89, 338 P.2d 118 (1959), Mr. Justice Wade, in dictum, recognized that some authorities require only a preponderance.

2. Lewis v. White, 2 Utah 2d 101, 269 P.2d 865 (1954).

up fruit, the demonstrator again very frankly said she didn't know, but would write to Westinghouse for the information. Such frankness certainly does not clearly and convincingly show any wilful deception on the part of Nickles' agent. Although plaintiff testified that this lady had said the oven would cover all plaintiff's cooking needs, when asked about specific items, the demonstrator honestly could not say, but evinced a desire to contact Westinghouse, who, in the last analysis, made the claims as to what the stove would do, in its literature, which accompanied the stove and which claims did not depart in any reasonable degree from the statements made by Nickles and his agent who repeatedly referred to Westinghouse's brochure. In it, for example, Westinghouse, among many other instructions for use, said this, for any purchaser to read: "In the drawer * * * you will find a file containing hundreds of recipes for Electronic cooking, arranged in index cards, for the simplest handling." Further examination of this brochure, the demonstrator and Nickles, though each denied making such statement, would not have departed very far from the manufacturer's claim, if they had said the unit would cover all plaintiffs' cooking needs,— certainly not such departure as would prove by *clear and convincing* evidence that the demonstrator and Nickles made wilful, intentional statements to deceive those who actually sought them out and asked a lot

of questions, some answers to which almost convinces us that contrary to the accusations made and the conclusion of the trial court, there was considerable evidence of an intention *not* to deceive, but honestly to apprise plaintiffs of the stove's capabilities.

The plaintiffs bought the stove and it was installed. They financed it with C.I.T. on an installment plan. They signed a note, and made payments. After admitting they had used it at least for a short period, in order to obtain a $50 reduction in the price under a referral agreement with Nickles, one of the plaintiffs actually recommended the range to her own brother-in-law, who bought one. Another example of the lack of clear and convincing quality of the testimony as to claim of fraud, was that given by plaintiff in other respects. When asked if her husband ever wrote to C.I.T., she first said he did not, then, when confronted with his signature on a letter, remembered that he wrote one *complaining* of the range. When shown the contents of the letter, they evinced no dissatisfaction whatever with the range, but simply requested that plaintiffs be allowed to make their future payments on a different day of the month,—this, after almost 4 months' use of the appliance.

An examination of other of plaintiff's testimony, without detailing it all, but to which she must be bound, reflects that, with

the exception of a handful of food items, *she* could cook nothing edible or palatable in the unit, suggesting possible menu malingering, or possible failure to follow the instructions on hundreds of recipe cards accompanying the stove. She added that the stove was improperly installed, wired defectively, with exposed wires that would kill on contact with a person, all of which was contradicted, at least, by an expert who examined it a year later. She complained that little potatoes cooked faster than big ones, but conceded on cross-examination that they cook faster in any conventional stove.

The lady demonstrator mentioned above, who was no longer employed in the Nickles' store, and had no apparent reason to commit perjury, testified at the trial, and it appears that she was intelligent above average and was quite candid and frank in her response to questions. She said she got her information to make demonstrations from the recipes and literature furnished by Westinghouse, and gave copies to prospective customers. She boiled water, cooked bacon, hot dogs, meat loaf, baked potatoes, roasted ham, cake and the like, all with success. When she answered prospective purchasers, she believed she was telling the truth. She said she did not tell customers the unit would do everything a surface unit would do. As to what she said the stove would do, virtually was that contained in the Westinghouse literature, which literature disagrees vastly with what plaintiff claimed it would not do for her personally,—a difference of opinion between her and Westinghouse research. The trial court got into the act, testing this witness' proclivities in the culinary art, with respect to some food items. The court, who reflected some experience in cooking pancakes himself, indulged in a colloquy with her as to when the pancakes rise. She rose to this occasion by demonstrating what this writer thinks was a superior knowledge of pancake cooking than that of the trial judge, except as to "Swedish" non-rising hotcakes, about which she had no knowledge,—nor does this writer. She was asked about boiling two-inch potatoes in the unit, how much water was needed for a few as distinguished from many, etc. In the exchange of knowledge, it appears that the court was a definite loser in the joust.

Nickles testified, as did the demonstrator, that any representations made were parroted from Westinghouse's written instructions and claims, which accompanied the unit. Both denied making the broad claim that the unit would do everything. If they did, the Westinghouse literature itself outlined the scope of the unit's capabilities, and it would seem unreasonable, and certainly not clear and convincing that an appliance store man would be more conversant with and convincing as to the capabilities than Westinghouse itself, upon which a purchaser would rely, under the controverted

evidence adduced in this case, and it seems unlikely that this name. brand would do practically nothing that Westinghouse claimed for it. It is interesting to note that Westinghouse was not made a defendant in this litigation.

It is conceded that plaintiffs *claimed* the stove would not work. It is significant, however, that they made no claim of *fraud* until they were sued for delinquent payments. If, as plaintiffs contend, the stove was a death trap and within one month after acquisition would do nothing but spoil, not cook food, it is difficult to understand why they asked in October, four months after purchase, for change of the future payment dates, and why they didn't rescind for fraud and make a tender back, but chose to keep the unit for over a year, asserting such fraud only after being sued, when in equity it would seem to have been their duty to assert such defense upon, or within a reasonable time after discovery.

We review the law *and* facts in this type of case, and in our opinion the evidence adduced in this case is far removed from that high quality of proof required to show that defendant,—and the demonstrator, if you please,—were liars, substantiated only by the self-serving testimony of one aggrieved person who, nonetheless, in this case convinced a trial court apparently that she knew more about the capabilities of the stove than Westinghouse. Her opinion in that respect, does not lend itself to any clear and convincing conclusion that a distributor and his agent both perjured themselves. beyond a permissible puffing, even though there is considerable doubt here that *any* permissible "puffing" was indulged.

A point was made that Nickles admitted the stove would not "fry" eggs or cook pancakes, but he explained that the process of electronic cooking is permeation of micro waves and is not designed to cook more on the bottom side of a food item, as is the case where the heat is applied from a *surface* upon which the food is placed. Any physicist would note the distinction.

An off-the-record statement which plaintiff said was made, but denied by Nickles, to the effect he personally did not have one of the stoves in his home and that they were to be sold, not used, was urged to show he knew he was selling a lemon, not a stove. Under oath he testified that he did not have one of the stoves permanently in his home, but only on occasion, for a couple of days, for demonstration purposes. This latter testimony obviously lends an entirely different complexion to his off-the-record remark, even if he did make it, and to any innuendo created thereby, and hardly could establish deceit by clear and convincing evidence when viewed in the light of all the evidence.

McDONOUGH, CALLISTER and WADE, JJ., concur.

CROCKETT, Justice (dissenting):

It is conceded that the charge of fraud must be proved by clear and convincing evidence. Pace v. Parrish, 122 Utah 141, 247 P.2d 273. This court has repeatedly said that because the trial court is in an advantaged position to judge the credibility of witnesses, it will look with some indulgence upon its findings; and that in cases in equity, it will not overturn them on appeal unless the evidence clearly preponderates to the contrary. See Nokes v. Continental Min. & Mil., 6 Utah 2d 177, 308 P.2d 954.

The range we are concerned with, known as a Westinghouse "Speed-O-Light" Electronic Range, is a new departure from conventional methods of cooking with ordinary heat. The manufacturer's brochure explains that the energy of high frequency radio waves is directed into the food, where it is therein converted into heat, so that the only heat generated is in the food, not in the utensils or the oven; and that the food is heated immediately uniformly through, thus cooking with great speed.

The plaintiffs' (the Sohms) evidence is that the defendant represented the stove as usable for all general home purposes, (except only for cooking hotcakes) specifically, that it would: fry eggs, bake cakes and bread, cook cereals and can fruit; and that the cooking could be done in regular dishes, including Melmac (a plastic);

whereas, the fact is that while this high-speed internal cooking by the intense heat created by transformed micro waves will indeed cook some foods with great speed, it is not suitable for general household cooking, particularly that none of the tasks just stated could be done satisfactorily on it. For example, they said that eggs would not fry, but that it had the effect of baking them so they were not palatable; that a similar undesirable effect resulted from attempting to fry meats; that various foods which normally took a long time to cook, such as bread or other baked items, could not be cooked satisfactorily; and this was also true of a number of vegetables and other foods.

On examination by the court, Mr. Nickles himself admitted that the stove had its limitations.

"The Court: You do not get fried eggs out of the equipment?

"Nickles: No, sir.

"The Court: What else wouldn't it do, besides fry eggs, cook pancakes and make taffy?

"Nickles: It wouldn't cook foods, some foods, as we are accustomed to preparing them."

Mrs. Sohm testified that at the time their depositions were taken she stated to Mr. Nickles:

"Since this is off the record * * * are you using your electronic range now?

"And that in response he laughed and said, 'No, they are to be sold, not to be used.' "

So far as I am concerned I think it fortunate that we are not obliged to pass upon the merits or demerits of electronic cooking. Nor need we be concerned with the laws of physics relating to the transformation of radio waves into heat within foods, nor with their palatability as affected by it. Cooking is an art which has been fraught with complexities since ancient times and likely will continue to be so. I quite willingly leave its mysteries to others. But unless the plaintiffs' evidence, upon which the trial court based its findings, is inherently incredible, we should allow him the privilege of believing it if he so desired.

The trial judge chose to believe the plaintiffs' evidence: that the defendants made the representations stated above; and that they were false. He also appears to have accepted the plaintiffs' explanations concerning the referral of the brother-in-law as a prospective purchaser; and as to why they waited until after they had had the stove for about a year and were sued for the purchase price before they interpleaded Mr. Nickles and set up the claim of fraud.

As to the former: that it was right after they purchased the range and had gone on vacation, and before they really had a chance to use it, that they made the recommendation. As to the delay: they insisted that they did in fact complain to Mr. Nickles about the stove shortly after buying it; that they continued to do so; were referred to Westinghouse; that it was after a number of discussions and a further demonstration that they finally decided that the stove could not be made to work as represented and decided that they would not pay any more, which precipitated the bringing of this action.

It would be less than candid not to admit that a very plausible case can be made, as is done in the main opinion, for the proposition that fraud was not proved by clear and convincing evidence. However, the critical consideration in this case is as to how much deference should be allowed to the trial court in judging the credibility of the witnesses and finding the facts. It is important to keep in mind his prerogatives: to believe whom he chooses; and to disbelieve whom he chooses; and that it should rest largely within his province to determine whether the required standard of proof was met. See statement in Child v. Child, 8 Utah 2d 261, 232 P.2d 981. If this is done, I am not prepared to say that the evidence so clearly preponderates against the findings as to require upsetting the judgment.