417 P.2d 643

**Russell S. SCHOW and Doris Schow, his wife, Plaintiffs and Appellants,**

**v.**

**GUARDTONE, INC., a Nevada corporation, et al., Defendants and Respondents.**

**No. 10546.**

Supreme Court of Utah.

Aug. 23, 1966.

Howard & Lewis, S. Rex Lewis, Provo, for appellants.

Cullen Y. Christensen, Provo, for Guardtone, Inc.

Romney & Boyer, Harold R. Boyer, Salt Lake City, for Prudential.

McDONOUGH, Justice.

Plaintiffs, Russell and Doris Schow, sued defendants, Guardtone, Inc., et al., to have certain contracts relating to the purchase of an intercommunication and fire alarm system for their home declared void for fraud. On special interrogatories a jury found the issue in favor of the plaintiffs. The trial court gave judgment notwithstanding the verdict. Plaintiffs appeal.

In September 1962, the plaintiffs entered into the contracts with Albert J. Hughes, an agent for Guardtone of Utah and Guardtone, Inc. of Nevada, to purchase the intercom and fire alarm system which was thereafter installed in their home. The following documents were executed:

1) A Conditional Sales Contract which provided for the sale and installation of the system;

2) A "Home Modernization Contract" providing that the purchaser would pay the contract balance in 36 equal consecutive monthly installments in the amount of $29.40 each;

3) A "Bonus Appointment Guarantees" agreement providing in part for the payment of $400 to the plaintiffs for the first 20 appointments made through the plaintiffs' referrals and $400 for the second 20 appointments resulting from their referrals; and

4) An "Advertising Agreement" providing in part that plaintiffs were to receive $100 for each referral made by them from which a sale resulted.

In separate provisions, each of the collateral agreements, the Conditional Sales Contract, the Bonus Appointment Guarantees, and the Advertising Agreement, provided that the payment of the rewards would not affect the obligation of the purchaser to pay for the equipment in accordance with the terms of the contract. Guardtone promised that its agent would promptly call on and make the sales presentation to each willing prospect. It is also to be noted that Mr. Hughes acted for Guardtone in each of these contracts. He signed the first as agent for Guardtone, the second and third as agent for Guardtone of Utah, and the fourth for Guardtone, Inc. It was the "Home Modernization Contract" which required the plaintiffs to make monthly payments which was assigned to the defendant, Prudential Federal Savings.

It is the plaintiffs' contention that the entire transaction was an integrated whole and that the "Bonus Appointment Guarantees" agreement for referrals and rewards therefor was illusory and never intended to be kept.

The trial judge's prerogative to enter a judgment notwithstanding the verdict can properly be exercised only in a situation where there is no reasonable basis in the evidence to justify the verdict of the jury.[1] The first question is whether there is clear and convincing evidence of fraud and deception practiced upon the plaintiffs.[2] In reviewing this question we look at the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the findings and verdict.[3]

We do not disagree with the argument made that the mere fact that the plaintiffs may have made a bad bargain will not support a charge of fraud. Nor with the proposition that the buyer is under a duty to exercise reasonable care and prudence before entering into a transaction.[4] Likewise, the fact that a promissor failed to perform his promise will not suffice to make out such a charge.[5] In such a transaction as we here consider, it must be proved that the seller had a preconceived intention not to perform the promises made.[6] However, a survey of this evidence reveals several things which could reasonably be regarded as supporting plaintiffs' contention.

The so-called "Bonus Appointment Guarantees" and "Advertising Agreement" providing such munificent rewards impress one as highly impractical, and this, together with the fact that they were divided into separate contracts, could reasonably be considered as casting doubt upon the good faith of the defendants in the transaction and as leading one to believe that it was an attempt by one knowledgeable and skilled to take advantage of the gullible.[7] There is testimony that the agent Mr. Hughes was a "high pressure" salesman who spent several hours of persuasion with the plaintiffs. He gave them to believe that they were specially selected to be advertisers of this product through the referral plan. Though the plaintiffs made a substantial number of referrals, it was shown that the defendants made very little effort to follow them up, and in fact failed to keep several appointments which the plaintiffs themselves had made, indi-

---

1. Holland v. Brown, 15 Utah 2d 422, 394 P.2d 77; Bates v. Burns, 3 Utah 2d 180, 281 P.2d 209; Johnson v. Dept. of Labor & Industries, 45 Wash.2d 71, 273 P.2d 510.

2. Lundstrom v. Radio Corp. of America, 17 Utah 2d 114, 405 P.2d 339; Universal C. I. R. Credit Corp. v. Sohm, 15 Utah 2d 262, 391 P.2d 293; Condas v. Adams, 15 Utah 2d 132, 388 P.2d 803; Holland v. Moreton, 10 Utah 2d 390, 353 P.2d 989.

3. Condas v. Adams, supra note 2; Bates v. Burns, supra note 1; 30A Am.Jur. (Judgments § 300).

4. Lewis v. White, 2 Utah 2d 101, 269 P.2d 865.

5. Fleming v. Fleming-Felt Co., 7 Utah 2d 293, 323 P.2d 712.

6. See cases cited supra note 2.

7. Lewis v. White, supra note 4; Reese v. Harper, 8 Utah 2d 119, 329 P.2d 410.

cating that the program as told to the plaintiffs was not bona fide, nor intended to be kept in the first place. In accord with this idea, Guardtone of Utah continually moved from place to place, changing its telephone number frequently, which seemed to be in an. effort to evade being located by telephone.

It was the "Home Modernization Contract" which was assigned to the defendant Prudential Federal Savings shortly after it was executed. In connection therewith it is of some significance that this document was first executed by Mr. Hughes in the name of Guardtone of Utah, and that later, but prior to the assignment, the face of the document was altered by changing the name of the obligee from "Guardtone of Utah" to "Guardtone, Inc.," without telling the plaintiffs anything about it. A further anomaly is that Guardtone, Inc., assignor, while contending that the assignment is valid, refuses to accept responsibility with respect to the "Bonus Appointment Guarantees" agreement, which was also signed by Hughes in behalf of Guardtone of Utah. It was about this same time that Guardtone of Utah appears to have become insolvent and that Mr. Hughes, agent for both companies, disap-

peared and has not been heard from since. The final point to be noted is that there was testimony that the price charged for the intercommunication and fire alarm system was grossly excessive. From the foregoing circumstances it is our opinion that the jury was justified in finding that a fraud had been practiced upon the plaintiffs.[8]

We turn to a consideration of the rights of the assignee, the defendant Prudential Federal Savings. It is pertinent to observe that the fraud having been established to avoid the contract with Guardtone, the burden of showing that it was an innocent purchaser for value was upon Prudential. In regard thereto there are certain aspects of the evidence which are pertinent to consider. The first of these is that the "Home Modernization Contract" is a printed form which, in the usual "fine print" includes the name of Prudential Federal Savings as the assignee.[9] Similarly, it recites that the assignee accepts the contract "with recourse." These circumstances might reasonably lead one to believe that the assignee had something to do with the planning of this transaction and knew the facts concerning the collateral contracts,[10] and that

---

8. Pace v. Parrish, 122 Utah 141, 247 P. 2d 273.

9. In regard to applying the reasonable prudent man test to "fine print" provisions of a contract, see Andreasen v. Hansen, 8 Utah 2d 370, 335 P.2d 404.

10. Lundstrom v. Radio Corp. of America, 17 Utah 2d 114, 405 P.2d 339; Public Nat. Bank & Trust Co. v. Fernandez, Mun.Ct.N.Y., 121 N.Y.S.2d 721.

it was advisedly attempting to avoid any involvement of itself therein, but without regard to what effect those contracts may have upon the purchasers. Finally, and most important, is the fact that there was a substantial alteration on the face of the assigned contract in the name of the payee, from Guardtone of Utah to Guardtone, Inc., a circumstance which should put a prudent purchaser on inquiry.[11] No such inquiry was made.

From the facts recited herein it is our opinion that there is a basis in the evidence upon which the jury could fairly and reasonably refuse to believe that the defendant Prudential Federal was an innocent purchaser and which supports the conclusion that it was bound by the judgment rescinding the contract for fraud. We have heretofore pointed out the importance of affording parties who desire it a trial by jury; and that the courts should exercise caution and reluctance in interfering with them.[12] It is our view that the judgment should be in accordance with the jury verdict and the case is remanded for that purpose.

Costs to plaintiffs (appellants).

HENRIOD, C. J., CROCKETT and CALLISTER, JJ., and C. NELSON DAY, District Judge, concur.

11. 4 Am.Jur.2d (Alteration of Instruments § 28); Utah Unif.Com.Code 70A-3-304(1) (a).

12. Holland v. Brown, supra note 1; Gordon v. Provo City, 15 Utah 2d 287, 391 P.2d 430.