John CHRISTOPHER and Ruth Christopher, Plaintiffs and Respondents,

v.

LARSON FORD SALES, INC., et al., Defendants and Appellants,

v.

LARSON FORD SALES, INC., Defendant, Third-Party Plaintiff and Appellant,

v.

CONDOR COACH CORPORATION, Third-Party Defendant and Respondent.

No. 14063.

Supreme Court of Utah.

Nov. 29, 1976.

John L. McCoy, of Ryberg, McCoy & Halgren, Salt Lake City, for appellant.

Dwight L. King, Salt Lake City, for Christopher.

L. Ridd Larson of Ray, Quinney & Nebeker, Salt Lake City, for Ford Marketing.

Robert W. Miller, Salt Lake City, for Condor Coach Corp.

CROCKETT, Justice:

Plaintiffs, John and Ruth Christopher, returned a Condor Motor Home they had purchased from defendant, Larson Ford Sales, Inc., and demanded return of the purchase price of about $16,000, claiming that misrepresentations had been made in the sale. Upon defendant's refusal, plaintiffs brought this suit alleging breach of warranty and fraud. Defendants answered, denying those allegations and plead a claim of breach of warranty against third-party defendant, Condor Coach Corporation. Upon a trial, the jury found the issues in favor of the plaintiffs and judgment was entered thereon for $16,867.92; and the trial court dismissed the claim against Condor.

Defendant, Larson Ford, contends that the trial court erred in submitting to the jury the issues of breach of warranty of merchantability and of fraud; and further, in dismissing its third-party claim against Condor.

Plaintiff and his adult son, Robin, went to defendant's place of business at 5500 South State Street and talked to John Larson, salesman for defendant, but who in connection with this transaction represented himself to be a vice-president. Plaintiffs told him that they needed a motor home that could travel throughout the Intermountain West carrying a number of persons and that it should be powerful enough to tow another vehicle. Mr. Larson assured them that the Condor would meet those requirements; that it was a "new machine" that had only 7,000 miles on it; that it was a "good car"; and that it was in "reasonably fit condition." Plaintiffs bought the vehicle on May 19, 1972. Mr. Larson could not find the warranty documents so he wrote out a warranty stating: "This unit is fully covered under Ford's service warranty" and "we will guarantee his service policy is valid and in effect."

Prior to that date the motor home had been idle, so it was necessary to condition it for operation and the plaintiffs did not test-drive it until after the contract was signed. When they did so, they found it difficult to start and under-powered. In fact, the defendant's mechanic came and helped to get it started. The next day, plaintiffs returned it to the defendant and asked to rescind the transaction. Mr. Larson told them that all the problems would be remedied; and that the son, Robin, should take the intended trip to the West Coast, and then bring it back if there were any further problems. Plaintiffs' evidence is that during the trip various problems did arise and persist, including: difficulty in starting, the engine overheating, the transmission slipping in and out of gear, the interior auxiliary motor refusing to operate, and the interior appliances, including the sink and toilet, not working properly. After some repair stops, they got the motor home back home and again returned it to

the defendants, who refused their request for rescission; and this lawsuit resulted.

Plaintiffs called an expert witness, Mr. William Haslam, who testified there were numerous defects in the vehicle. These included that the solenoid (the starter activator) was mounted too close to the exhaust manifold, causing it to overheat, which resulted in difficulty in starting; there was difficulty in getting gasoline to the auxiliary motor; the power train was too small for the load it was to carry, the transmission kicked down when it got hot, and that excessive howling was caused by a defect in the differential.

### Implied Warranty

■■■ Defendant assigns a series of errors relating to the issue of breach of implied warranty and its submission to the jury. First, it asserts that that issue was not pleaded in the complaint, so the defendant was not apprised of it. It is true that our rules require that the basis of claim must be stated with reasonable certainty and clarity, so the other party will have notice of what he is obliged to meet.[1] But it is also held that if the issue is actually tried, so that a party suffers no disadvantage therefrom, he is precluded from complaining about it.[2] In that regard, the complaint does mention breach of warranty and asserts that the representations made to the plaintiffs included: "that the Condor Motor Home was reasonably fit for the purpose intended." Evidence was adduced upon the issue; and the defendant made no request nor representation concerning the necessity of additional time in which to meet it. Consequently, under the rule just stated above we do not see that any prejudicial error was committed on that issue.

■■■ Second, defendant argues that any implied warranty was disclaimed by the documents of sale. Section 70A–2–316,

---

[1] Rule 8, U.R.C.P.; *Blackham v. Snelgrove,* 3 Utah 2d 157, 280 P.2d 453.

[2] *Taylor v. E. M. Royle Corp.,* 1 Utah 2d 175, 264 P.2d 279; *Morris v. Russell,* 120 Utah 545, 236 P.2d 451; Rule 15(b), U.R.C.P.

U.C.A.1953, requires that to exclude an implied warranty of "merchantability," a disclaimer must be conspicuous, i. e. in larger or contrasting type or color. The reason for this provision is that it is the policy of the law to look with disfavor upon semi-concealed or obscured self-protective provisions of a contract prepared by one party, which the other is not likely to notice. We think it is a correct and salutary rule, that where there are provisions of this character in a contract, either buried in other provisions in fine print or are otherwise seimi-concealed or secreted in some manner, such as being found only by reference to the backside of the document, they should not be binding upon the signer (buyer) unless it is shown that the provision was actually called to his attention.[3] Notwithstanding the fact that the face of the contract contained the required reference to "merchantability," the actual disclaimer was among other fine print provisions on the back thereof. Under the doctrine just set forth, in the absence of any evidence that this disclaimer was called to the plaintiffs' attention, the defendant cannot insist that it be effective as a waiver.[4]

Third, defendant contends that the plaintiffs did not give it timely notice of their desire to return the motor home and rescind the contract. The statutes pertinent to this contention are:

Section 70A–2–607(3)(a), U.C.A.1953, which states:

the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach . . . ;

and Section 70A–2–608(2), U.C.A.1953, which provides:

Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . . .

■ In this argument the defendant does not fairly analyze the evidence in the light favorable to the plaintiffs' contentions, as it should be. What constitutes "a reasonable time" for return and request for rescission under the statute quoted above is usually a question of fact to be determined from the circumstances of each case;[5] and the finding thereon is subject to the standard rule of review that it will not be upset if there is a reasonable basis in the evidence to sustain it. That basis is found here in the facts that plaintiffs actually returned the motor home the next day after delivery and expressed a desire to rescind the transaction, but were persuaded to keep it only upon condition that they try to overcome the difficulties of which they complained; and that after they took it on the trip to California, during which the difficulties persisted, they returned it on July 13, 1972, and asked for the return of their money.

■ Fourth, the defendant contends that in any event the trial court was not justified in submitting the issue of implied warranty of merchantability to the jury. We are in accord with the trial court's view expressed in the instruction that there is an implied warranty that the motor home must have been fit for the usual and ordinary purposes of its intended use.[6] Notwithstanding the defendant's contentions with respect thereto, the testimony of Mr. Haslam concerning the defects in the motor home, coupled with his opinion that because of those defects the vehicle did not meet the just stated requirement, provided a sufficient basis to justify permitting the jury to pass upon that issue.

3. See *Sellman Auto, Inc. v. McCowan*, 89 Nev. 353, 513 P.2d 1228.

4. Id.; See also *Seal v. Tayco, Inc.*, 16 Utah 2d 323, 400 P.2d 503.

5. *Lanners v. Whitney*, 247 Or. 223, 428 P. 2d 398.

6. Sec. 70A–2–314(2)(c), U.C.A.1953; *Pacific Marine Schwabacher, Inc. v. Hydroswift Corp.*, 525 P.2d 615 (Utah 1974).

### The Issue of Fraud

We recognize some merit in defendant's argument that in transactions such as the sale of a motor vehicle a certain amount of sales talk or "puffing" by the seller is to be expected, for which the law should make due allowance. With respect to the representations made, in order to avoid repetition herein of the elements of fraud, we refer to our prior decisions.[7] It is sufficient to say that the trial court instructed the jury to each and all of the necessary elements; and as to the required burden of proving them by clear and convincing evidence.[8] The jury appears to have accepted the plaintiffs' version thereof: that the representations were material to the transaction and that they were false and fraudulent as to the plaintiffs. In spite of the fact that, as defendant contends, this court may itself review questions of fact in equity,[9] we are not persuaded that under the established rules of review we should interfere with the findings in this case.[10]

### Dismissal as to Manufacturer

Concerning the trial court's dismissal of the claim of breach of warranty against the third-party defendant, the manufacturer, Condor Coach Corporation, defendant is in the difficult position of insisting on the one hand that the motor home was in good condition, and on the other, that there were defects therein attributable to the manufacturer. However, as between these two parties the important point is that the warranty was limited to 12 months, or 12,000 miles, whichever occurred first. The indisputable fact and the insuperable obstacle to defendant's recovery against Condor, is that it had purchased the vehicle two years previously. With respect thereto, the trial court made this observation which reflected a correct analysis of the situation between those parties and justified the dismissal of the action as against Condor:

> . . . You can't say that two years later, 7,800 miles later . . . that Condor can be held to say that when Larson Motor sells that to the Christophers that Condor is still warranting that vehicle merchantable. You just can't stretch that warranty of Condor's over that period, and say that as of the day they sold it to the Christophers that warranty was binding on Condor.

On the basis of what has been said herein, the judgment dismissing the defendant's cross-complaint against Condor and the judgment on the jury verdict in favor of the plaintiffs and against the defendant, Larson Ford, are affirmed. Costs to plaintiffs (respondents).

HENRIOD, C. J., and ELLETT, MAUGHAN, and WILKINS, JJ., concur.

---

7. *Stuck v. Delta Land & Water Co.*, 63 Utah 495, 227 P. 791; *Pace et al. v. Parrish et al.*, 122 Utah 141, 247 P.2d 273.

8. *Universal C.I.T. Credit Corp. v. Sohm*, 15 Utah 2d 262, 391 P.2d 293.

9. See *Bezner v. Continental Dry Cleaners, Inc.*, 548 P.2d 898 (Utah) and cases cited therein; and Sec. 9, Art. VIII, Utah Const.

10. See statement of the rule in *Allredge v. Allredge*, 119 Utah 504, 229 P.2d 681; and *Stanley v. Stanley*, 97 Utah 520, 94 P.2d 465.