UTAH POWER & LIGHT
COMPANY, Plaintiff,

v.

The BABCOCK & WILCOX
COMPANY, Defendant.

Civ. No. 88–C–789B.

United States District Court,
D. Utah, C.D.

Aug. 14, 1992.

Stanford Owen, P. Bruce Badger, Salt Lake City, Utah, Samuel F. Chamberlain,

Bountiful, Utah, David A. Westerby, Salt Lake City, Utah, for plaintiff.

Ray R. Christensen, Russell G. Workman, Phillip S. Ferguson, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

BENSON, District Judge.

On August 7, 1992, a hearing was held before the Honorable Dee Benson on Defendant's Motion for Partial Summary Judgment as to Plaintiff's first and second causes of action. Stanford B. Owen and P. Bruce Badger represented the plaintiff, Utah Power & Light Company. Ray R. Christensen and Phillip S. Ferguson represented the defendant, The Babcock & Wilcox Company.

Having reviewed the memoranda submitted by the parties, having heard oral argument from counsel, being fully appraised, and for good cause appearing, the Court makes the following findings and enters the following ORDER:

## BACKGROUND

This matter is before the Court on defendant Babcock & Wilcox's motions for partial summary judgment as to Utah Power & Light's first cause of action for breach of express warranty and its second cause of action for breach of the implied warranty of merchantability and fitness for a particular purpose. This action arises out of a contract between UP & L and B & W whereby UP & L purchased a high pressure steam generator known as Hunter No. 3. Beginning in October of 1973 UP & L prepared bid specifications for the purpose of soliciting bids for a coal fired steam boiler. According to UP & L they had never owned or operated a B & W high pressure, natural circulation boiler and were concerned about the design. They met with B & W whose intent was to counter UP & L's concerns. Subsequently B & W was awarded the contract. Negotiations continued over the next six years with the plant being moved from its original site in Kemmerer, Wyoming to Emery County, Utah. The contract was finalized by a purchase order dated July 3, 1979. The purchase order incorporated as part of the agreement UP & L's specifications, B & W's 1973 proposal and 1978 revised proposal along with several other items of correspondence between the parties.

Hunter Unit No. 3 began commercial operation in June 1983, though it was actually in operation six months prior to that. In October, 1984 the boiler was shut down for a scheduled outage, at which time the furnace was inspected, and all of the water wall tubes and other equipment were found to be clean and free of corrosion. In February of 1986, during another scheduled outage, extensive corrosion to the water wall tubes was found. The cause of the corrosion is a matter of dispute. UP & L maintains that from the beginning the boiler experienced extensive chemical hideout whenever operated at pressures in excess of 2400 psi.

## DISCUSSION

### I. *Express Warranty*

■ Defendant's Motion for Partial Summary Judgment as to the first cause of action is denied without prejudice. Plaintiff has pointed to sufficient evidence to allege that a performance guaranty exists in the contract in this case. However, defendants assert the clause found on page 7–3 of the proposals limits liability to 12 months from the date of initial operation. Plaintiff claims this provision relates only to parts and therefore does not disclaim liability for a design defect. The language is as follows:

> The company shall repair or shall replace, install (on a straight time basis only), any parts of said equipment which within 12 months from the date of initial operation (first firing) are found to be defective in design, workmanship, material ..., or erection ..., provided said equipment is operated by the PURCHASER in accordance with generally approved practice and in accordance with the operating instructions and other conditions of service specified by the company and the purchaser notifies the compa-

ny in writing as soon as such defect becomes apparent ...

Performance guarantees extended by the company to the purchaser are as set forth in the performance section of the company's proposal.

The Court finds as a matter of law that this provision is ambiguous as to whether it is referring to parts only or to the boiler as a whole. Therefore parol evidence will be allowed in determining the intent of the parties.

In addition, defendant asserts that the disclaimer found on page 3–3 of the proposals defeats plaintiff's claim for breach of express warranty. The disclaimer states:

WATER. The treatment of feedwater and the conditioning of the boiler water are beyond the control of the company. Therefore the company shall not be held responsible for damage due to the presence of oil, grease, scale, or deposits, on the internal surfaces of the equipment; or for damage resulting from foaming caused by chemical conditions of the water; or for damage resulting from corrosion....

B & W contends this provision disclaims any responsibility for damage resulting from corrosion. Plaintiff claims this provision was intended to limit B & W's liability for damage to the boiler caused by improper treatment of feedwater of improper chemical conditioning of the boiler water.

■ The Court finds genuine issues exist in two areas. First, if the corrosion was not caused by the treatment of the feedwater or the conditioning of the boiler water this disclaimer does not apply. Plaintiff has pointed to sufficient evidence that the possible cause of the corrosion was a design defect, in which case the clause would not apply. Second, the clause states, "[T]he treatment of feedwater and the conditioning of the boiler water are beyond the control of the company." There appear to be genuine issues as to whether Babcock & Wilcox was actually in control of the boiler water treatment. If B & W was in actual control of the treatment or conditioning, genuine issues arise as to whether the clause applies.

All of these factors create genuine issues of fact for trial. However, if after discovery, the evidence indicates these disclaimers do apply the motion may be renewed. Partial Summary Judgment as to the first cause of action is denied without prejudice.

## II. *Implied Warranties*

Defendant's Motion for Partial Summary Judgment as to the second cause of action is granted. As a matter of law all implied warranties were disclaimed according to the guidelines set forth in U.C.A. § 70A–2–316. That provision reads:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in the case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.

The disclaimer is found on page 3–9 of the proposals, it reads:

THE SOLE LIABILITY OF THE COMPANY AND THE EXCLUSIVE REMEDY OF THE PURCHASER FOR FAILURE TO MEET THESE GUARANTEES, WHETHER ARISING UNDER CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, SHALL BE AS SPECIFIED ABOVE. THE COMPANY AND PURCHASER AGREE THAT IN CONSIDERATION OF THE ABOVE EXPRESS PERFORMANCE GUARANTEES THAT ALL OTHER PERFORMANCE GUARANTEES EITHER EXPRESS OR IMPLIED, WHETHER ARISING UNDER LAW OR EQUITY, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXCLUDED FROM THIS CONTRACT.

Plaintiff admits that the provision appears to meet the U.C.C. requirements, and there is really no doubt that it does. It

includes the word merchantability and it is conspicuous. The Utah Supreme Court has held, "to exclude an implied warranty of merchantability a disclaimer must be conspicuous i.e. in larger or contrasting type or color." *Christopher v. Larson Ford Sales,* 557 P.2d 1009, 1012 (Utah 1976). The disclaimer in this case was in capital letters and conspicuous. In light of the fact that this contract was reviewed very carefully many times by both parties and their counsel over a period of six years this clause cannot be construed as a concealed or obscured self-protective provision of a contract prepared by one party as was the case in *Christopher. Id.*

■ Plaintiff claims that regardless of whether the disclaimer meets the U.C.C. requirements, it is ambiguous. Ambiguity is a question of law for the court to decide. A contract provision is ambiguous if it is capable of more than one reasonable interpretation. This may be because of uncertain meaning of terms, missing terms or other facial deficiencies. *Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991).

■ The Court finds as a matter of law that the clause is not ambiguous, it excludes all other warranties either express or implied, including warranties of merchantability and fitness for a particular purpose. This means both implied and express warranties of merchantability and fitness for a particular purpose, not one or the other as plaintiff argues.

■ Plaintiff also claims the disclaimer is unconscionable. It is well settled in Utah that persons dealing at arms length are entitled to contract on their own terms without the intervention of the courts. *Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1041 (Utah 1985) (quoting *Bekins Bar V Ranch v. Huth,* 664 P.2d 455, 459 (Utah 1983)). However, there are some recognized limits to which a party may be compelled to perform an unconscionable duty. *Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1041 (Utah 1985).

■ Several different formulas exist for determining what is unconscionable, however the official comment to the U.C.C. explains the test is whether the clauses involved are so one sided as to be unconscionable under the circumstances as they existed at the time the contract was made. It further states, "the principle is one of prevention of oppression and unfair surprise." *Id.* The Utah Supreme Court stated in *Weston,* "the standard for determining unconscionability is high, even if not precise." *Id.*

■ In light of the fact that the contract was negotiated over a period of six years between two experienced corporations that had the advice of competent counsel, it cannot be said that this contract contained any unfair surprises.

For the foregoing reasons, IT IS HEREBY ORDERED that defendant's Motion for Partial Summary Judgment as to the first cause of action is DENIED without prejudice. The Court further ORDERS that defendant's Motion for Summary Judgment as to the second cause of action is GRANTED.