## CHARLES H. DE FREES, RESPONDENT, v. GEORGE W. CARR, AND ANOTHER, APPELLANTS.

CANCELLATION.—FRAUD.— MISREPRESENTATION.— Where the sole consideration for the execution of a deed was the transfer to the grantor by the grantee of certain share of stock, of a certain corporation, where it appeared that the grantor was of weak mind, that the value of said shares were fraudulently misrepresented by the grantor, that certain profits had been made on said stock during a certain period, which said representations were wholly false and made for the purpose of deceiving the grantor, who relied upon them; *held* that the deed should be canceled on the ground of fraud, even though the grantor might have informed himself as to the facts but did not.

APPEAL from a judgment of the district court of the fourth district, and from an order refusing a new trial. The facts are stated in the opinion, except the following:

The testimony of Thomas H. Carr as to his purchase was as follows: "I bought the property of George W. Carr. I was to pay $4,500. I paid him $250 in cash. I was to pay $40 a month until it was paid for. I afterwards sold one-half to Jeremiah T. Callahan. He was to pay me $2,400 for that half. He paid me $266 cash, and gave a note and mortgage for the balance, which I turned over to George W. Carr as part payment for the whole. I also paid George W. Carr the $266 received from Callahan. I knew nothing about the trade with Dr. Frees until after I had bought the property."

Callahan was not made a party to the suit. The defendant Thomas H. Carr, who was examined for the plaintiff, made a motion for a non-suit, where plaintiff rested, and there stood upon his motion and introduced no testimony.

The decree was made solely as to the two Carrs, and canceled their deeds, and required George W. Carr to assign the mortgage given by Callahan to Thomas H. Carr to the plaintiff.

*Messrs. Evans and Rogers,* for the appellants.

*Messrs. Maloney and Perkins* and *Messrs. Boreman and Boreman,* for the respondent.

Bartch, J.:

This was a proceeding in equity tried in the district court for the fourth judicial district. It is shown by the record in this case that, on the 11th of November, 1891, the plaintiff was the owner of certain real estate situate in the city of Ogden, Utah, and that the defendant, George W. Carr, owned thirty-five shares of the capital stock of the "Consolidated Lumber and Milling Company" of the par value of $100.00 per share; that on said date the plaintiff sold and conveyed by deed the said property to the defendant, George W. Carr, and received as payment therefor the thirty-five shares of stock, and was also to receive a certain sum of money alleged to be then due as profits from said stock; that defendant, George W. Carr, sold the said property to his son, Thomas H. Carr, one of the said defendants, on the 13th day of November, 1891, that sometime after the first sale, or trade, had been consummated, upon the investigation of the affairs of said company, the plaintiff became dissatisfied with his bargain, claimed that he had been misled as to the value of the shares of stock, etc., by the representations of defendant, George W. Carr, and others mentioned in the record; that then he tendered back to defendant, George W. Carr, the said stock and demanded of him a reconveyance of said property, which reconveyance having been refused, the plaintiff brought his action, alleging that certain statements and

representations made to him by the defendant, George W. Carr and others above referred to, before and at the time the said transaction took place, in regard to the value of the said stock, etc., were false and fraudulent and made with the intent to cheat and defraud the plaintiff and prayed that the said deed from plaintiff to defendant, George W. Carr, be canceled, etc. After the trial the court rendered judgment in favor of the plaintiff, and thereupon the defendants appealed to this court, assigning as error the overruling of a motion for non-suit and various other rulings made during the trial of the causes.

The evidence shows that the plaintiff for some years has been a sufferer from epilepsy and that as a result his mind has become weakened; that this was known at least to one of the defendants previous to the transaction; that defendant, George W. Carr, stated to the plaintiff that the said company was worth $50,000, and had only $9,000 liabilities; that it made $5,659.70 clear gain from the 14th of February to the 1st of October, 1891; that his share of the profits would be $943.28; that the thirty-five shares of stock were worth $3,500.00, etc., and that these statements were corroborated by employes and others interested in the company in the presence of said defendant; that the defendants then knew that said company was wholly insolvent and that the said shares of stock had no actual value; that the property of plaintiff to be exchanged therefor was worth about $4,600.

It further appears that on the 13th of November, two days after the said transaction, the defendant, George W. Carr, conveyed the property to his son, Thomas H. Carr, one of the defendants, without adequate consideration, who in turn disposed of a portion of it on the 19th of November. It is also shown that the books of the company were kept in an improper manner so that it was difficult to obtain accurate information; that defendant, George W. Carr, was manager of the company; and that plaintiff

relied on the said statements of the defendants. These representations having been made before and at the time of the making of the bargain, and being of a positive and apparently reliable character, the question is were they material? Did they furnish such inducements to enter into the transaction as were calculated to mislead the plaintiff? The evidence does not show that the plaintiff knew the said company was insolvent, or that he had any knowledge of its business or financial responsibility except such as he obtained through the defendants, while it is a fair conclusion to be drawn therefrom that the defendants did know the company was insolvent and that the said shares of stock had no actual value.

Under these circumstances the representations of the defendants to the plaintiff that the shares were worth $3,500, and their statements as to the profits, etc., were material, and being statements of facts and of a decided character, the plaintiff had a right to rely on them.

If a person makes a statement with a view to and for the purpose of influencing the action of another it is no hardship to hold such person to their truth. If, upon due inquiry, such statements are found to be false, the party making them will be liable to the person who was deceived and injured thereby and whose action they were intended to influence. Cooley on Torts, 2d ed. 577 and 580; *Drake* v. *Grant*, 36 Hun, 464; *Eaton* v. *Winnie*, 20 Mich. 156.

Counsel for defendants contend that the plaintiff had the opportunity to examine the books of the company to ascertain its condition and satisfy himself as to its responsibility before the trade was made, but even if this were the case, it would not license the defendants to lull the plaintiff into a state of security by false but apparently reliable statements of facts such as are complained of in this case. The defendant, George W. Carr, was manager of the company and its condition and finan-

cial responsibility will be presumed to have been within his knowledge. He cannot escape from the effects of his statements by saying that the plaintiff could have ascertained its true condition. Where one party to a contract misrepresents a material fact which operates as a surprise and an inducement to the other party relief will be granted in equity. *Miner* v. *Medbury,* 6 Wis. 295; *Davis* v. *Heard,* 44 Miss. 50; *Smith* v. *Richards,* 13 Peters, 26.

The principles of law which govern this case are stated by Justice STORY in his work on Equity Jurisprudence, Vol. 1, § 191, as follows: "One of the largest classes of cases in which courts of equity are accustomed to grant relief is where there has been a misrepresentation or *suggestio falsi.* It is said indeed to be a very old head of equity, that if a representation is made to another person going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good if he knows it to be false. To justify however an interposition in such case, it is not only necessary to establish the fact of misrepresentation, but that it is in a matter of substance, or important to the interests of the other party and that it actually does mislead him." And again in § 192, he says: "Where the party intentionally or by design misrepresents a material fact or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him,— in every such case there is a positive fraud, in the truest sense of the terms. There is an evil act with an evil intent,—*dolum malum ad circumveniendum.* And the misrepresentation may be as well by deeds or acts as by words, by artifices to mislead, as well as by positive assertions."

If these principles apply to the dealings of persons of sound mind and discretion *a fortiori,* do they apply to cases where the mental faculties have been weakened by disease. Where, as in this case, one undertakes to deal

with such a person, he is justly held to the truth of his statements and is under more than ordinary obligations not to practice deception, and if he, knowingly makes false assertions it is a positive fraud. And even if one misrepresents a material. fact by mistake, relief will be granted; for the assertion of what he does not know, or believe to be true is equally unjustifiable in law, as the assertion of that which is known to be false. Cooley on Torts, 2d ed. 603; *Perkins* v. *Scott,* 23 Iowa, 237; *Smith* v. *Richards,* 13 Peters, 26.

In view of the evidence and circumstances in this case, we think the plaintiff is entitled to the relief prayed for.

The motion for non-suit was rightfully overruled and the record reveals no reversible error in the other rulings of the trial court.

The judgment is affirmed.

.Zane, C. J., and Blackburn, J., concurred.