## PACE et al. v. PARRISH et al.

No. 7677.   Decided August 1, 1952.   (247 P. 2d 273.)

142

See 37 C. J. S. Fraud, sec. 34; Duty of purchaser to investigate representations of vendor. 23 Am. Jur., Fraud and Deceit, secs. 155 et seq.; 70 A. L. R. 942.

*Preston & Harris, L. Tom Perry,* Logan, for appellants.

*Glen E. Fuller,* Salt Lake City, for respondents.

CROCKETT, Justice.

This is an action for damages arising out of misrepresentations in connection with a deal in which plaintiffs bought defendants' farm. A jury answered special interrogatories favorable to the plaintiffs; the court made findings and judgment in accordance therewith. Defendants charge that the evidence is insufficient to sustain such findings and judgment.

Damages were awarded for misrepresentation with respect to the following items:

(1)  Poor quality "river bottom" land $1,750;

(2)  Hay removed $80;

(3)  Bad fences $100;

(4)  Deficiency in acreage (Rollins piece) $2,400;

(5)  The reservoir and water rights $4,320.

Plaintiffs also claimed damage because of inferior quality of land in the "south field" and for certain grain and other personal property, but with respect to these items the jury found for the defendants.

The burden was upon the plaintiffs to prove the fraud charged by clear and convincing evidence. *Taylor* v. *Moore,* 87 Utah 493, 51 P. 2d 222; *Campbell* v. *Zion's Co-op. Home Building & Real Estate Co.,* 46 Utah 1, 148 P. 401; *Ferrell* v. *Wiswell,* 45 Utah 202, 143 P. 582. The plaintiffs having prevailed, we review the evidence in the light most favorable to them, and, unless in so doing we must say as a matter of law that the evidence fails to meet the test of being clear and convincing, the findings and judgment of the court must be affirmed.

The plaintiffs, Harvey Pace and his sons, Rex, Byron and Keith, were farmers in the Uintah Basin and desired to locate near the metropolitan centers of our state. One of the boys, Rex Pace, in looking for such a farm went to see the defendants, Joseph A. Parrish and his wife, Ida E. Parrish, at their farm near the town of Mountain Green in Morgan County, Utah; it consisted of approximately 645 acres with a farm home and outbuildings thereon. Rex went there in company with one Reynolds Blackington, who seems to have no other status than a friend of Rex who also was well acquainted in that locality and familiar with the area. The purchase of the farm was discussed generally, and a tentative price of $50,000 was set, contingent upon inspection and approval of the farm by the rest of the Paces.

The following day, the other Paces went to and inspected the farm in company with Mr. Parrish. It extends from the flat bottoms along a creek up into the foothills, and is divided into a number of tracts for various types of farming and pasturing. As Mr. Parrish walks with the aid of a cane and it is difficult for him to get around on foot, they toured the farm and looked the place over in an automobile insofar as possible; however, this was somewhat limited as there had been a rain storm which made the ground muddy and the farm lanes difficult to travel.

The Paces seemed to be satisfied with the layout and later the contract of purchase was executed; $10,000 was paid down and other payments were to be made as specified. After the Paces had taken possession and learned what the facts were about the matters concerning which they claim were misrepresented to them, as set forth in the forepart of this opinion, this law suit was brought.

This being an action in deceit based on fraudulent misrepresentations, the burden was upon plaintiffs to prove all of the essential elements thereof. These are: (1) That

a representation was made; (2) concerning a presently existing material fact; (3) which was false; ■
(4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage. See *Stuck* v. *Delta Land & Water Co.*, 63 Utah 495, 227 P. 791; *Jones* v. *Pingree*, 73 Utah 190, 273 P. 303; 23 Am. Jur. 773; 37 C. J. S., Fraud, § 3, p. 215.

That is the yardstick we apply to the various items in the findings and judgment of the trial court concerning which issues are raised on this appeal.

On this inspection tour, defendant Parrish represented that the land in a tract described as the "south field" was good quality and highly productive. Plaintiffs inspected this field which was near the road on which they were travelling about the farm. In fact, they dug into the soil with a shovel. It does, in fact, appear to be rather rocky but the jury found that although the defendant had made a misrepresentation as to this field, the plaintiffs examined it themselves and thus could not reasonably rely on the representation made by the defendant and so properly refused to allow plaintiffs any recovery with respect to that claim.

Plaintiffs also claim damage because of the poor quality of certain other land described as "river bottom land in Section 19" which they testified was represented to be of the same kind and quality as that in the south field but was in fact much worse. This was virgin land ■
which had never been broken up. The jury found misrepresentation with respect to it; that the same was false and was reasonably relied upon by the plaintiffs to their damage in the sum of $1750.00. It was plain to be seen that this flat-bottomed land had never been cultivated. One of the Paces stated to Mr. Parrish: "I'll break that up".

Mr. Parrish testified that he thought: *"Maybe* you will and maybe you won't", but said nothing. Parrish's silence on this matter is undoubtedly somewhat blameworthy; however, the very fact that this flat land, lying in an area adjacent to other lands which had been cultivated, would likely have been enough to put a farmer on inquiry as to why it had not been. Further than this, the pictures show that the land was covered with rocks up to the size of a man's head and it was so obviously rocky that if the plaintiffs had taken the trouble to walk over it, the most casual of inspections would have shown that it was not good for cultivation. Parrish did nothing to actively prevent the Paces from making an inspection and it would have been little trouble to do so. Under those circumstances, we believe that it must be said as a matter of law that the plaintiffs did not use reasonable care and diligence. They were, therefore, not entitled to rely on the representation and that item of $1,750 in the judgment cannot be sustained.

But as to the other four items of damages awarded: The hay removed, the bad fences, the deficiency in acreage (Rollins piece) and the reservoir and water rights, the judgment is sound and is affirmed.

Defendants contend that the interrogatories conflict with respect to the hay. Wherever there is uncertainty or doubt in connection with the correlation of interrogatories with each other and their answers, they should be so interpreted as to harmonize with the findings of the the jury if that can reasonably be done. The $80 was awarded for 4½ tons of hay which the jury found one of defendant's sons had removed from the premises after the sale was agreed upon. By interrogatory IIIA, the jury found that all of the items of personal property intended to be included in the sale were included in the bill of sale. The bill of sale specified "all hay now on the property". Thus, the 4½ tons of hay, removed after the bill of sale was signed, was included in the bill of sale, and the jury could consistently assess damages for its removal.

With respect to the misrepresentation as to the condition of the fences: Plaintiffs' evidence was that the defendant told them that the property was fenced and cross-fenced with good fences; that this was not true; that some of the fences were in bad disrepair and in fact in places completely down. These places were remote from the area inspected and because of the difficulties above mentioned in getting around, we will not disturb the jury's finding that this misrepresentation was false; that the plaintiffs were reasonably entitled to rely upon it, and accordingly sustain the item of $100.00 awarded for such defective fences.

Concerning the ownership of the 11¾ acre field (Rollins piece) which was represented as being included in the defendants' farm: The testimony was that as Mr. Parrish was showing the Paces around, when they reached a point of vantage on a hill, he gestured with his hand across the land below and said: "* * * all the land that you see below belongs to me", which included this field. After the Paces had taken possession of the place, they found that as a matter of fact it belonged to one Lee Rollins. The tract had once been a part of the defendants' farm and bears every evidence of being a part of the farm presently. Exhibit "E", a picture from the point where the representations were made, shows this tract to be directly in line with the lands owned by the defendant, and contiguous to them. Also, a farm road ran from defendant's land onto and around the 11¾ acre tract and back onto defendants' land and connected up with the other roads on defendants' farm. In addition, the ditches from the reservoir ran directly to this tract with nothing to distinguish between it and any other cross fenced tracts owned by the defendants and to which irrigation ditches also ran. The fact that defendant represented that he owned the reservoir, coupled with the fact that the ditches from the reservoir appeared to lead right to this tract of land, would each supplement the other in strengthening a belief

in the truth of both of these representations: that is, that he owned the reservoir and the Rollins' piece. There was nothing about the appearance or location of this piece which would prompt any special inquiry as to its being included in the Parrish farm. It would have been impossible for the plaintiffs to have determined from any examination they could have made, short of surveying and comparing the surveys with the acreage and deeded description of the farm, that this 11¾ acres would bring the acreage above the 645-acre figure, and that it should not be included. Their duty to use reasonable care would not require them to go to such lengths.

The same may be said with respect to the reservoir and water rights. About this most important alleged misrepresentation, Rex Pace reports that the defendant Joseph A. Parrish said: "I own the reservoir"; that he also pointed out the reservoir and said: "The reservoir is on my place". Mr. Blackington testified that, as they were leaving, Parrish said: "If the deal went through, the reservoir went with the place * * *." Mr. Parrish admits that he told them that the reservoir was on his place but denied that he said he owned it or that it went with the place.

These representations concerning the reservoir could very well be interpreted to mean that the defendant owned the reservoir and all of the water in it and that it went with the place. The Paces could reasonably rely on these representations, as they did. The fact is that, although the reservoir was situated within the outside perimeter of the defendants' farm, both the reservoir and the land it was on belonged to The Northwest Irrigation Company, and the defendants were entitled to only one-fourth of the water. Defendants do not claim that plaintiffs knew or were advised of this fact but Mr. Parrish testified: "If they had asked me, I would have told them."

Defendants suggest that the plaintiffs had no right to rely on the representations made by defendant, but were

bound to make more careful and complete inquiry concerning such matters. It is strange and inconsistent for defendants to urge the necessity for the plaintiffs to cross-examine Mr. Parrish and to doubt and verify his representations.

As to reliance in such situations, see 5 Williston on Contracts, Rev. Ed., Sec. 1512. The full measure of the plaintiffs' duty was to use reasonable care and observation in connection with these representations. Having done so, it does not lie in defendant's mouth to say that they were too gullible and shouldn't have believed him. The facts as found by the jury satisfy the requisites for recovery on the basis of fraudulent misrepresentation as hereinabove set out.

Another matter worthy of attention is the fact that the Paces actually discovered the fraud with relation to the reservoir prior to the time that Rex signed the notes and mortgages given to secure the balance of the purchase price. The day the transaction was completed, Rex was not present. After the instruments had been signed by the others and the initial payment of $10,000 had been made, Mr. Parrish, according to Byron Pace, mentioned that Lee Rollins was the person who divided the water. Upon being pressed as to what was meant by this statement, he told them that they only had *one-third* of the water. Actually, as it later developed, they had only *one-fourth* of it, so this too was a misrepresentation. The disclosure was sufficient to put the Paces on notice that the original representation was false. This does not, however, preclude a suit for damages for the misrepresentation under the facts of this case. Of such a situation, 5 Williston on Contracts, Rev. Ed., Sec. 1524 p. 4267, says:

"* * * it would seem that one who has been defrauded could, though the contract is executory, affirm the contract and perform it without forfeiting his right to maintain an action to recover damages resulting from the deceit. Certainly, where the contract is even partially executed this result is clearly sound."

See also: *Anderson* v. *Laws,* 176 Or. 468, 159 P. 2d 201; *Forsberg* v. *Baker,* 211 Minn. 59, 300 N. W. 371; *Kohanik* v. *Beckman,* 212 Minn. 11, 2 N. W. 2d 125; and cases cited in Williston on Contracts, supra, in support of this rule. Here the plaintiffs had made a substantial payment on the purchase price and they were thus entitled to go ahead and perform and sue for damages for the misrepresentations.

Defendants also advance the contention that the evidence fails to support the award of damages.

"Measure of damages for fraud is difference between value of property purchased and value it would have had if representations were true." *Kinnear* v. *Prows,* 81 Utah 135, 16 P. 2d 1094. See also: *De Frees* v. *Carr,* 8 Utah 488, 33 P. 217; and *Hecht* v. *Metzler,* 14 Utah 408, 48 P. 37.

The evidence was that the "Rollins piece" was worth $200 per acre; the jury fixed the damages for 11¾ acres at $2,400, admittedly $50 off, but this could be justified on the basis of added value on account of its being a part of the farm unit. The damage to the fence was fixed at actual estimated cost to put it in reasonable condition and repair. The $4,320 for difference in the ownership of the reservoir and the water right set up is within the evidence as to the lesser value of the farm because of such diminished water rights. The court adopted the jury's findings with respect to these items of damage which find ample support in the evidence.

The case is remanded with instructions to deduct from the judgment the item of $1,750 for the "river bottom land". In all other respects, the judgment is affirmed. The parties to bear their own costs.

WOLFE, C. J., and WADE, McDONOUGH, and HENRIOD, JJ., concur.