Boyd J. BROWN, an individual, and Interwest Aviation Corporation, Plaintiffs, Counter–Defendants, Appellees, and Cross–Appellants,

v.

David K. RICHARDS, an individual, and David K. Richards & Company, Defendants, Counter–Plaintiffs, Appellants, and Cross–Appellees.

No. 900639–CA.

Court of Appeals of Utah.

Aug. 24, 1992.

owned personally by Brown (the Interwest Building). Brown also owned a neighboring hangar, known as the Executive Air Services Building (Executive Air Building).

In simple terms, the parties agreed that Richards would buy fifty percent of Brown's stock in Interwest for $450,000; Richards would then have the option after one year to buy the remainder of the stock for an additional $450,000 (collectively "the Interwest purchase agreement"). Richards also purchased sixty percent of Brown's ownership of the Interwest Building with an option to purchase the remaining interest after one year (collectively "the Interwest Building agreement"). Richards was also given an option to purchase the Executive Air Building.

The parties formally memorialized their agreements in writing as of April 23, 1984. Richards eventually exercised his options to purchase Brown's remaining interests in Interwest and the Interwest Building, but he did not exercise the option on the Executive Air Building.

Richards made principal and interest payments from April, 1984 to April, 1986. During that time, Brown and Richards jointly managed Interwest. Richards then defaulted. Brown sued Richards for his failure to make the payments owing on the Interwest purchase agreement and the Interwest Building agreement. Brown also claimed, notwithstanding the written Interwest purchase agreement, that the purchase price of the corporation was to increase by $500,000 if Richards failed to exercise the option to buy the Executive Air Building. Richards counterclaimed for fraud, negligent misrepresentation, breach of warranty, and breach of fiduciary duty.[1] The matter was submitted to a jury on special interrogatories at the close of an eight-week trial.

Robert S. Campbell, Jr. (argued), Kevin Egan Anderson, Joann Shields, Campbell, Maack & Sessions, Elizabeth T. Dunning, Carolyn Cox, Watkiss, Dunning & Watkiss, Salt Lake City, for appellants.

Bruce E. Coke (argued), Larry A. Kirkham, Curtis C. Nesset, Nygaard, Coke & Vincent, Salt Lake City, for appellees.

Before BENCH, P.J., and BILLINGS and GARFF, JJ.

## OPINION

BENCH, Presiding Judge:

Appellants, David K. Richards and David K. Richards & Company, (collectively "Richards"), appeal the trial court's judgment based upon special jury interrogatories regarding a commercial transaction entered into between Richards and appellees, Boyd J. Brown and Interwest Aviation Corporation, (collectively "Brown"). Brown cross-appeals. We affirm in part, and reverse and remand in part.

## BACKGROUND

### Facts

This case arises out of a complex transaction where Brown, the principal shareholder of Interwest Aviation Corporation (Interwest), sold his Interwest stock and several other assets to Richards through numerous agreements and options. We summarize the facts to include only those directly pertinent to our analysis.

Interwest was a fixed-based operation located on the east side of the Salt Lake International Airport. In addition to providing services such as maintenance, refueling, and de-icing, Interwest bought and sold aircraft and operated a charter service. Interwest was located in a building

### Jury Verdict

In response to the special interrogatories, the jury found that Brown did not substantially perform the agreement to sell

---

1. Richards had sought rescission as an alternative remedy, but opted to seek damages following Brown's motion for partial summary judgment on the issue of election of remedies.

Interwest. It further found that Brown had defrauded Richards with regard to the sale of Interwest. With respect to the question of damages, the jury found that the difference between the value of Interwest, as misrepresented by Brown, and its true value, as received by Richards, was $500,000. The jury also awarded Richards $550,000 in punitive damages.

In addition to its finding of fraud, the jury found that Brown had breached warranties in the sale of Interwest and awarded Richards another $100,000 damages. Finally, the jury found that Brown breached fiduciary duties owed to Richards during the period of their joint ownership of Interwest and awarded Richards an additional $300,000 in damages.

Regarding the Interwest Building agreement, the jury found that Brown had substantially performed the agreement to sell the Interwest Building and did not misrepresent the value of the building. Pursuant to the special interrogatory, the jury found that Richards breached the Interwest Building agreement and awarded Brown $407,259 in damages.

The question was also put to the jury whether Richards had agreed to pay an additional $500,000 for Interwest if he did not exercise the option on the Executive Air Building. The jury found that Richards had agreed to such an increase in price. The jury found, however, that despite Richards's failure to exercise the Executive Air Building option, Richards did not breach the agreement to increase the purchase price and did not award Brown any damages.

### Trial Court's Judgment

Richards submitted a proposed judgment based upon the jury's answers to the special interrogatories, and Brown objected. Several hearings were held due to objections raised by Brown until the trial court finally entered final judgment on the special interrogatories and its own supplemental findings.

Despite the jury's finding that Brown did not substantially perform the Interwest purchase agreement, the trial court awarded Brown the contract amount plus interest just as if he had prevailed on his claim against Richards. The trial court also awarded Brown $500,000 plus interest on his claim that the purchase price of Interwest was to increase if Richards did not exercise his option on the Executive Air Building.

The trial court then awarded Richards $500,000 plus interest on his fraud claim as the difference between the value of Interwest as represented by Brown and the value of the assets Richards received. Richards was also awarded the $550,000 found by the jury as punitive damages.

As to Richards's breach of warranty claim, the trial court ruled that the damages found by the jury were duplicative of the damages it found on the fraud claim. It therefore refused to award Richards $100,000 as found by the jury to be his damages from Brown's breach of warranty. It did, however, award Richards the full $300,000 found by the jury to have been the damages resulting from Brown's breach of fiduciary duty. The trial court did not disturb the jury's findings regarding Brown's damages resulting from Richards's breach of the Interwest Building agreement.

Finally, the trial court awarded attorney fees to both parties according to the contract upon which they prevailed: $435,000 to Richards pursuant to the Interwest purchase agreement, and $250,000 to Brown pursuant to the Interwest Building agreement.

We will identify the parties' alleged errors as we consider them. The parties raise fifteen separate issues with many sub-issues and alternative arguments. We have fully reviewed, but do not address, every issue and argument raised by the parties. The unaddressed claims and arguments are either mooted by our analysis, or we simply decline to address them. *See State v. Carter*, 776 P.2d 886, 888–889 (Utah 1989) (appellate court has discretion as to the extent of its opinion).

## PURCHASE PRICE

■ Richards asserts that the trial court erred in denying him a directed verdict regarding Brown's claim that Richards agreed to an increased purchase price of Interwest if Richards did not exercise the Executive Air Building option. Brown claimed a draft of the contract provided that the purchase price of Interwest would increase, but that the provision was absent from the final version. Richards asserts as a matter of law that such parol evidence may not be utilized to vary the express terms of the agreement. We agree.

Absent fraud or other invalidating clauses, the integrity of a written contract is maintained by not admitting parol evidence to vary or contradict the terms of the writing once it is determined to be an integration. It is also maintained by applying a rebuttable presumption that a writing which on its face appears to be an integrated agreement is what it appears to be.

*Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985) (footnote omitted).

The Interwest purchase agreement specifically set forth the purchase price and contained the following integration clause: "This Agreement and the exhibits hereto constitute the entire agreement between the parties with respect to the matters covered herein...." Brown's self-serving assertion that the contract was not integrated because it did not contain a provision he recalled from an earlier draft is insufficient as a matter of law to show the contract was not integrated.

[A] party may not establish a different contract on facts known at the time of reducing their understanding to written form. All preliminary negotiations, conversations, and verbal agreements are merged in and superseded by the subsequent written contract, and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties and its terms cannot be altered by parol evidence.

*Lamb v. Bangart*, 525 P.2d 602, 607 (Utah 1974).

There being no admissible parol evidence that the purchase price was not fully integrated into the contract, Brown failed as a matter of law to rebut the presumption that the contract was integrated. Richards was therefore entitled to a directed verdict on Brown's claim that there was an agreement to increase the purchase price. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991) ("a directed verdict is appropriate if, on uncontested facts and under the applicable law, one party is entitled to judgment").

Since Richards was entitled to a directed verdict, the question should not have been submitted to the jury and the trial court subsequently erred in awarding Brown $500,000 in its final judgment. The contract purchase price was $900,000, as expressly agreed to by the parties in writing. We therefore vacate the trial court's award of $500,000 to Brown for the purported increase in the contract purchase price of Interwest.

## FRAUD

### Sufficiency of the Evidence

■ Brown claims there was insufficient evidence of the elements of fraud and reliance by Richards to support the jury's verdict. Jury verdicts are entitled to great deference. We review the evidence in the light most favorable to the prevailing party, and will affirm "unless in so doing we must say as a matter of law that the evidence fails to meet the test of being clear and convincing...." *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273, 274 (1952). In order to challenge the jury's verdict, Brown "must set out in [his] brief[ ], with record references, all the evidence that supports the verdict, including all valid inferences to that effect, and demonstrate that reasonable people would not conclude that the evidence supports the verdict." *Hodges v. Gibson Products Co.*, 811 P.2d 151, 156 (Utah 1991).

Richards alleged in his complaint that Brown made seventeen misrepresentations about Interwest. Brown claims that as a matter of law Richards could not have reasonably relied upon Brown's misrepresenta-

tions when he exercised his options to purchase the remainder of Interwest and the Interwest Building after he had access to the true financial condition of Interwest as a co-owner. A similar argument was made and rejected in *Pace*, where a buyer chose to enforce a real estate contract after discovering the seller's fraud. The supreme court held that a defrauded party to an executory contract may "affirm the contract and perform it without forfeiting his right to maintain an action to recover damages resulting from the deceit." *Pace*, 247 P.2d at 277 (quoting 5 Williston on Contracts, Rev. ed., § 1524, p. 4267). *See also Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980) (a defrauded party, "who does not discover the fraud until he has partly performed, may go forward with the contract, keep what he has received, and still maintain his action for damages"). Inasmuch as Richards had invested a significant amount in purchasing his partial shares, it may have been reasonable for him to protect his initial investments by exercising the options, even if he had discovered the truth about the misrepresentations before exercising the options. A finding of reasonable reliance is therefore not precluded as a matter of law.

While Brown does raise questions about some of the representations, and whether Richards reasonably relied on some of the statements, he has not marshaled the evidence in support of the jury verdict and shown why the jury could not have found fraud. He only cites the evidence favorable to his claims and reargues the evidence as if at trial.[2] Such an approach is inappropriate on appeal. *Hodges*, 811 P.2d at 156. Since Brown has failed to marshal the evidence and show how the jury could not have reasonably found fraud, we do not disturb the jury's finding.

### Evidentiary Errors

■ Brown also challenges the jury's verdict based upon alleged evidentiary errors made by the trial court. As the supreme court has noted, "in any lawsuit of several days duration counsel can usually find matters upon which he may claim error, but this court will not reverse on mere error but only if it is substantial and prejudicial to the extent that there is a reasonable likelihood that unfairness or injustice has resulted." *Lamb*, 525 P.2d at 610. Even assuming that the trial court committed the errors Brown claims, Brown has failed to show how the errors prejudiced the outcome of his case. Brown asserts only that the awarding of punitive damages evidences prejudice because, except for the evidence erroneously admitted, there was no conduct egregious enough to warrant punitive damages. Given the untainted evidence of the willful misrepresentations made by Brown, we disagree. We therefore do not disturb the judgment.

### Offset of Fraud Damages Against Purchase Price

■ On Brown's claims that Richards breached the Interwest purchase agreement, the trial court awarded Brown the full purchase price of Interwest as if he had prevailed against Richards. Richards argues that the trial court erred in awarding Brown the full contract purchase price because Brown was barred from recovering anything under the Interwest purchase agreement. While the trial court erred in portraying its final judgment as an "award" to Brown of the full purchase price, with an offsetting "award" to Richards, Richards's argument that Brown was barred from receiving any amount under the Interwest purchase agreement fails.

Richards had asserted an equitable "substantial performance" defense against Brown's breach of contract claim.[3] The

---

2. In replying to Richards's claim that Brown has failed to properly marshal the evidence, Brown makes the disingenuous argument that he need not marshal the evidence in support of the jury's verdict because it was so "light." He then asserts that the length restrictions on his brief prevented him from marshaling this "light" amount of evidence.

3. The substantial performance defense has been explained as follows: "As a rule, a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform. He can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *Fernandez v.*

jury found that Brown did not substantially perform the Interwest purchase agreement when it responded "no" to the following special interrogatory: "As the term is defined in the court's instructions, [has Brown] substantially performed his agreement to sell the assets of Interwest?" According to Richards, the jury's negative response, in light of the substantial performance instruction, evidences an intent that Brown not recover anything under the contract.[4] Richards therefore claims the trial court impermissibly substituted its judgment for that of the jury by allowing Brown to recover under the contract. *See generally, First Security Bank of Utah v. Ezra C. Lundahl, Inc.*, 22 Utah 2d 433, 454 P.2d 886, 889 (1969) (trial court may not make a "further finding" that contravenes jury's finding); Utah R.Civ.P. 49(a). Richards, however, misperceives the legal effect of the trial court's ruling.

It is axiomatic that, in a jury trial, the jury determines the facts and the trial court determines the law. Richards erroneously claims that the trial court "supplanted" the jury's factual findings regarding substantial performance with its own factual findings. In reality, the trial court simply applied the law to the jury's factual finding that Brown did not substantially perform his obligations under the contract. There is no factual finding by the jury that Brown could not recover anything under the contract. That is a question of law. The jury instruction and special interrogatory only explain that if Brown did not substantially perform his duties under the contract, he may not enforce the contract

against Richards. They do not indicate that, under all circumstances, Brown would be barred from recovering anything under the contract.

Whether Brown could recover anything under the contract was Richards's decision. Richards could either: (1) rescind the contract, in which case Brown would not recover anything under the contract but would receive back that which he had conferred upon Richards, i.e., ownership of Interwest; or (2) elect to enforce the contract, in which case Richards would retain ownership of Interwest and Brown would be entitled to recover under the contract, after adjustments for his lack of performance. *Sidney Stevens Implement Co. v. Hintze*, 92 Utah 264, 67 P.2d 632, 638 (1937). Richards elected to enforce the contract. Richards's election allows Brown to recover under the contract, even though Brown himself could not have enforced the contract given the jury's factual finding.

■ In addition to his substantial performance defense, Richards raised a fraud defense, under which he was likewise entitled either to rescind the contract and tender back ownership of Interwest or to retain ownership and seek damages. *Id.; see also Dugan*, 615 P.2d at 1247; *Perry v. Woodall*, 20 Utah 2d 399, 401–02, 438 P.2d 813, 815 (1968). In light of Richards's election to retain ownership and enforce the contract, the jury was requested to find the difference between the actual value of Interwest, as received by Richards, and the value Interwest would have had if it had been as represented. This value differen-

---

*Purdue*, 30 Utah 2d 389, 391–92, 518 P.2d 684, 686 (1974) (Ellett, J. dissenting) (quoting 17 AmJur2d, Contracts § 365). *See, e.g., Darrell J. Diedericksen & Sons v. Magna Water and Sewer Improvement Dist.*, 613 P.2d 1116, 1119 (Utah 1980); *Wagstaff v. Remco, Inc.*, 540 P.2d 931, 933 (Utah 1975).

**4.** The following instruction, with our emphasis, was given to the jury regarding substantial performance:

In order for a party to recover on a contract, said party must first establish by a preponderance of the evidence his own substantial performance. A party who seeks to take advantage of a right under the contract is charged with the burden of proving the facts

necessary to show he has substantially performed his side of the bargain.

A party substantially performs his side of the contract where there has been no willful departure from the terms of the contract, and no omission in significant points, and the contract has been performed in its material and substantial particulars. *If a party fails substantially to perform his duties under the contract, the law does not require the other party to perform or adhere to the contractual terms. Under those circumstances, the doctrine of substantial performance [releases] the second party ... from his contractual obligations and duties.*

tial is the "benefit of the bargain" rule that is followed in this jurisdiction. *Lamb,* 525 P.2d at 609; *see also Dugan,* 615 P.2d at 1247; *Dilworth v. Lauritzen,* 18 Utah 2d 386, 389, 424 P.2d 136, 137–38 (1967); *Pace,* 247 P.2d at 277. The jury found the value differential to be $500,000. Richards claims that he is entitled to collect the $500,000 as a cash award and to retain ownership of Interwest without making any further payments therefor.

■ Brown correctly points out that if Richards is allowed to obtain full ownership of Interwest for only the amount already paid *and* collect the difference between the value of Interwest as represented and as received, Richards would reap a windfall. He would collect a double recovery, i.e., a $500,000 cash award *and* forgiveness of his contractual obligation to Brown, worth approximately $700,000.[5] Such a double recovery would be contrary to the benefit of the bargain rule. The clear rationale of the rule is that because of the seller's fraud, the purchaser paid more for the asset than it was really worth. The purchaser therefore deserves to recoup the overpayment. Benefit of the bargain damages are, in effect, a refund to the purchaser of the overpayment in order to bring the effective purchase price in line with the actual value received. Both parties thereby receive the full benefit of the bargain; the defrauded party only pays, and the culpable party only receives, the true value of the asset sold.

■ Where a contract is executory and the purchase price has yet to be paid in full, a cash award for the value differential *and* a forgiveness of any outstanding debt violates the goal of the benefit of the bargain rule. Instead of receiving the true value of the asset sold, Brown would receive only the amount paid, which, in this case, appears to be less than the true value of Interwest as found by the jury. Brown would thereby not receive the benefit of the bargain. The fraud damages must therefore be offset against the contracted purchase price. If Richards has not paid an amount sufficient to satisfy the adjusted purchase price, he must satisfy the unpaid portion in order to retain ownership of Interwest. Otherwise, he receives much more than his benefit of the bargain.

Richards relies on *Lamb v. Bangart,* 525 P.2d 602 (Utah 1974), in asserting that he is entitled to forgiveness of the debt and recovery of differential damages under the benefit of the bargain rule. Richards's reliance on *Lamb* is misplaced. In *Lamb,* the purchasers entered into a contract to pay $50,000 for one-half interest in a breeding bull. After paying a $20,000 deposit and entering into a contract to pay the remaining $30,000 in one year, the purchasers discovered that the bull was injured and unable to produce. The bull's health was so feeble that the bull was shot shortly after the contract was signed.

Richards relies upon the supreme court's statement that "[i]n the instant action, the balance of the unpaid purchase price was irrelevant in determining the measure of damages to which plaintiffs were entitled." In reality, the contract in *Lamb* provided that the additional outstanding $30,000 payment would be excused if the bull died before the payment was due without producing 1,500 ampules of semen. *Id.* at 608. The contractual debt was therefore excused under the express terms of the contract, and not as a common law remedy as claimed by Richards. Therefore, the outstanding balance was clearly not relevant in *Lamb.*

As a general proposition, the existence of an outstanding balance is irrelevant to a determination of the difference between the true value of an asset and the value of the asset as misrepresented. The difference would be the same regardless of whether the purchaser has paid the purchase price in full or in part. An outstanding balance is only relevant to a determination of whether the seller must pay the purchaser, or the purchaser the seller, in

---

5. Richards claims that there is no double recovery because the $500,000 fraud award reflects consequential damages he incurred. Such a claim is unfounded in that the special interrogatory asked only for the value differential, not for consequential damages.

order to reach the benefit of the bargain being awarded.

In the present case, Richards receives the benefit of his bargain by having his $500,000 award credited against the original purchase price of $900,000. The payments already paid by Richards toward the purchase of Interwest must then be credited against an adjusted contract purchase price of $400,000. The trial court failed to follow this approach in its final judgment. Instead, it erroneously gave Brown an "award" on his claims that Richards breached the Interwest purchase agreement, even though Richards proved that Brown had defrauded him. Brown clearly was not entitled to an award on his causes of action to enforce the agreement. The trial court should have addressed Brown's entitlement to the purchase price under its discussion of Richards's counterclaim for fraud as being a result of Richards's election to enforce the contract. Accordingly, we vacate any award inconsistent with this approach.

On remand, the trial court shall determine whether Brown must repay Richards, or Richards must pay Brown, using the adjusted purchase price of $400,000. If such recalculations show that Richards still owes Brown, Brown is entitled to recover such adjusted amounts under the contract.[6] This is the legal result of Richards's election to affirm and enforce the contract rather than to rescind it.

### Prejudgment Interest

■ The trial court awarded Richards prejudgment interest on his $500,000 fraud award. Brown asserts that this was error since fraud damages are not determinable with mathematical certainty, a precondition to awarding prejudgment interest. *See generally Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 784 P.2d 475, 482 (Utah App.1989). Without addressing the prejudgment interest debate directly, we reach the same net result as the trial court

by a different analytical approach. *See Buehner Block Co. v. UWC Associates,* 752 P.2d 892, 894–95 (Utah 1988).

The trial court awarded Brown his full contract purchase price of $900,000 plus interest at the rate of ten percent up until the time of trial. It then awarded Richards his fraud damages of $500,000 plus interest at the rate of ten percent up until the time of trial. In theory, the prejudgment interest awarded Richards thereby cancels out the interest awarded Brown on the amount that Brown defrauded Richards, i.e., the $500,000. Under the trial court's analysis, Richards was required to pay Brown interest on the amount Brown defrauded him. The award of prejudgment interest to Richards on the fraud damages was apparently an attempt to remedy this obvious injustice.

Richards was entitled to the $500,000 fraud award at the time he was defrauded, i.e., the contract date. At that time, Brown had a voidable contract with a $900,000 purchase price. According to the jury, however, the true value of Interwest was only $400,000. Brown therefore could not, as a matter of law, receive interest on the full $900,000 purchase price; he was only entitled to interest on the $400,000 adjusted purchase price. *Cf. Vasels v. LoGuidice,* 740 P.2d 1375, 1378 (Utah App.1987) ("[prejudgment] interest accrued as damages arising out of a valid contract determined to have been breached by the other party.").

By offsetting the original purchase price by the fraud damages at the time of contracting, we reach the same result as awarded by the trial court. Under this approach, we eliminate the perceived need for "prejudgment interest" on the fraud damages.

### BREACH OF WARRANTY

■ The jury found that Brown breached the warranties made in the Interwest purchase agreement and thereby caused

---

6. By recalculating Richards's payments against an initial principal amount of $400,000, rather than the contract principal amount of $900,000, Richards will have effected a faster amortization, resulting in a different outstanding balance at the time of trial than was found by the trial court.

Richards $100,000 in damages. The trial court ruled, without explanation, that the breach of warranty damages were duplicative of the fraud damages already found by the jury, and set the jury's verdict aside. Richards claims that there is a nonduplicative basis for the breach of warranty award and the trial court erred by merely assuming that the award was duplicative.

One nonduplicative basis of damages pointed to by Richards is his claim for repairs to Interwest's fuel farm. Brown warranted that the assets of Interwest were in good and serviceable condition. In reality, Interwest's fuel farm was in serious disrepair and did not meet fire code standards. It cost Richards $176,000 to repair the fuel farm. The costs of repair were not included as damages under the fraud claim. They were only identified as a breach of warranty damage. The $176,000 claim for repairs provides sufficient grounds for the jury to make a nonduplicative award for breach of warranty.[7]

■■■■ A jury is allowed wide discretion in awarding damages. *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985). Courts must defer to the jury's determination of damages unless (1) the jury disregarded competent evidence, (2) the award is so excessive beyond rational justification as to indicate the effect of improper factors in the determination, and (3) the award was rendered under a misunderstanding. *Id.* at 1084. No such errors appear in this case to justify the trial court in striking the jury's award. The trial court's ruling amounted to nothing more than mere speculation that the

awards were duplicative. We therefore reverse the trial court's ruling and reinstate the jury's award of $100,000 to Richards for Brown's breach of warranty.

## FIDUCIARY DUTY

■■■■ The trial court awarded Richards $300,000 in damages for Brown's breach of a fiduciary duty during the period when Brown and Richards were jointly operating Interwest. The breach arose from Brown's involvement in borrowing against a line of credit for operational costs when Richards and Brown had an agreement that the line of credit would only be used for purchasing airplanes for resale. Richards had signed as a personal guarantor on the line of credit. Brown claims that there was no evidence that he breached any fiduciary duty owed to Richards.

The trial court instructed the jury that a breach of an understanding between joint venturers could constitute a breach of fiduciary duty.[8] Richards points to the evidence of an agreement between Richards and Brown that the line of credit would only be used for aircraft acquisition. Brown claims there was no such agreement and presents his favorable evidence to that effect. The evidence was therefore in conflict. Given the deference we grant jury findings, we must conclude the jury considered the contradictory evidence and found that the parties in fact had such an understanding and that Brown breached it.

Brown also claims that there was no evidence that Richards was damaged by the use of the line of credit for operational

---

7. Arguably, Richards need not even prove that there was a nonduplicative basis for the jury's award because the proof required to prove fraud differs from that required to prove a breach of warranty. The jury may have simply found that Brown did not commit fraud in making some of the misrepresentations because he lacked fraudulent intent, but that he did have sufficient intent in making those representations to find a breach of warranty.

8. The trial court gave the jury the following instruction:
   To prevail on a claim for breach of fiduciary duty, a party must prove by a preponderance of the evidence:

(1) That the parties were engaged in a joint venture;
(2) That one party took actions which benefitted himself at the expense of the joint venture and which were inconsistent with the understanding of the parties or otherwise acted in a way inconsistent with the duties of loyalty, good faith, fairness and honesty owed by parties engaged in a joint venture to one another; and
(3) That as a result, the other party suffered damages.

expenses. Brown's argument fails as a matter of law because Richards became legally obligated to satisfy a debt he did not wish to incur in the joint venture, i.e., debt for the operations of Interwest. Richards has therefore presented sufficient evidence that he was damaged.

Finally, Brown asserts that the award of $300,000 was not supported in the evidence. Richards asserts that the principal and interest exceeds $300,000. Brown has not marshaled the evidence in favor of the award amount and has thereby failed to meet his burden of showing that no reasonable person could find damages of $300,-000. We therefore do not disturb the jury's finding.

## ATTORNEY FEES

The trial court found that Richards was entitled to attorney fees as the prevailing party in the dispute concerning the Interwest purchase agreement. The trial court also found that Brown was entitled to attorney fees as the prevailing party in the dispute concerning the Interwest Building agreement. Without giving any calculations or explanations of the amounts, the trial court then awarded Richards $435,000 for attorney fees pursuant to the Interwest purchase agreement, and Brown $250,000 for attorney fees pursuant to the Interwest Building agreement. Brown claims that the trial court erred in its award of attorney fees to Richards both as to entitlement and amount.

### Entitlement

■ Brown asserts that he alone is entitled to attorney fees. He argues that the entire transaction should be combined as if there were but one attorney fee provision for the entire transaction. He would then be the prevailing party since he received a "net judgment" greater than that received by Richards. Such an argument is con-

trary to the express terms of the Interwest purchase agreement which, with our emphasis, contains the following attorney fees provision:

> In the event suit is brought to enforce the provisions of *this agreement,* the prevailing party in such action shall be entitled to recover its reasonable attorney's fees and costs incurred in connection therewith.

As clearly stated, Brown agreed to compensate Richards if Richards prevails in a suit brought to enforce the Interwest purchase agreement. The agreement expressly refers to the prevailing party in suits relating to "this agreement," not the prevailing party in suits relating to "this transaction." A review of the Interwest purchase agreement and the Interwest Building agreement shows that they are independent and may therefore be enforced separately. *See Bess v. Jensen,* 782 P.2d 542, 544 (Utah App.1989) (significant factor in determining independence of contracts is whether they are supported by separate valid consideration).

■ Had Brown brought two separate lawsuits, one on each agreement, Richards would clearly have received attorney fees in the case regarding the purchase of Interwest.[9] The fact that a single lawsuit was brought to enforce both contracts does not eviscerate Richards's contractual right to attorney fees. The prevailing party on a given contract may recover fees without consideration of other claims in the same case arising from other contracts between the parties. *See Elder v. Triax Co.,* 740 P.2d 1320, 1323 (Utah 1987). To hold otherwise would create a disincentive to combine permissive counterclaims into one lawsuit. We therefore do not collapse the independent agreements involved in this multifaceted transaction and "net out" a single prevailing party.[10]

**9.** Despite the trial court's mischaracterization of Brown's entitlement of payment under the contract as an "award," Brown's receipt of the purchase price could not properly be considered a judgment in Brown's favor when it was awarded pursuant to Richards's election to affirm the fraudulently induced contract. Brown there-

fore did not receive any judgment to be "netted" against Richards's award of $500,000.

**10.** Even if the contracts were merged into one, both parties are entitled to fees when both parties are successful in enforcing different provisions of a contract against the other. *Trayner v.*

Despite the fact that Richards was awarded damages on his fraud and breach of fiduciary duty claims, Brown argues that he actually prevailed because Richards did not obtain the full amount he was seeking. According to Brown, he "defeated" Richards on 90% of his fraud and breach of fiduciary duty claims because Richards only received 10% of his claimed damages. Such reasoning ignores the inescapable fact that while Richards may not have prevailed to the full extent he felt entitled, he nevertheless prevailed. It is the determination of culpability, not the amount of damages, that determines who is the prevailing party. *See Highland Constr. Co. v. Stevenson*, 636 P.2d 1034, 1038 (Utah 1981) ("a party in whose favor an affirmative judgment is rendered, whether or not the judgment is for less than initially sought in the complaint, is the 'prevailing party'"). While a reduction in the amount claimed by a plaintiff may seem a moral and financial victory for a defendant, it does not make the defendant the "prevailing party" in terms of attorney fees. Brown's claim he "prevailed" therefore fails.

Brown also claims that the trial court failed to award him some of his legal fees to which he was entitled. Brown successfully defended against Richards's efforts to rescind contracts unrelated to the sale of the Interwest assets. The trial court, however, dismissed these efforts because it perceived them to be only a minor portion of the overall lawsuit and did not award any attorney fees therefor. As is evident from our previous analysis, Brown was entitled to an award of attorney fees for successfully defending his contractual rights on contracts unrelated to the sale of the Interwest assets, even if such efforts were not a significant portion of the overall lawsuit. We therefore direct the trial court to address Brown's claim on remand.

## Calculation

Brown asserts that the trial court erred in the amount of attorney fees awarded to Richards because it did not follow the guidelines set forth in *Dixie State Bank v. Bracken*, 764 P.2d 985 (Utah 1988). The supreme court recognized in *Dixie State Bank* that the calculation of attorney fees is in the sound discretion of the trial court and will not be overturned absent a showing of a clear abuse of discretion. *Id.* at 988. It then set forth several factors that trial courts should consider in awarding attorney fees. In particular, it identified the following four questions that a trial court should answer before awarding attorney fees.

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors ...?

*Id.* at 990 (footnotes omitted). *See also Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 268 (Utah 1992) ("Except in the most simple cases, the evidence should include the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work.").

Trial courts should make findings on all of the factors they consider in awarding attorney fees. *See, e.g., Cabrera v. Cottrell*, 694 P.2d 622, 624 (Utah 1985). In the present case, the trial court acknowledged that it was "unable to arrive at allowable fees and costs with mathematical certain-

*Cushing*, 688 P.2d 856, 858 (Utah 1984); *see also Stacey Properties v. Wixen*, 766 P.2d 1080, 1085 (Utah App.1988) (fees are appropriate for partial success); *cf. Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.*, 766 P.2d 1074, 1079–80 (Utah 1988) (suggesting need to "differentiate between the time spent on the successful claim[s] and the time spent on unsuccessful

claims" and propriety of awarding fees only for the former). *But see Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551, 555–56 (Utah App.1989) (applying disfavored "net judgment" approach in holding only one prevailing party under circumstances of the case, even though both parties received monetary damages).

ty." [11] It proceeded to list a few factors that it considered, none of which answer the basic questions posed in *Dixie State Bank.* It then summarily awarded Richards $435,000. The findings do not indicate what work was actually performed in relation to the contractual claims upon which Richards prevailed and that it was necessary, nor do they indicate the billing rate of Richards's counsel and the customary rate in this market.

In this case, the award of attorney fees is a complex matter due to the adjudication of multiple claims arising under several contracts with each party winning some and losing some. Given the complexities, the trial court's summary findings are simply too sparse for us to determine whether the trial court made a permissible award. "Unless the record clearly and uncontrovertedly support's the trial court's decision, the absence of adequate findings of fact precludes appellate review of the evidentiary basis underlying the trial court's decision and requires remand for more detailed findings by the trial court." *Quinn v. Quinn,* 830 P.2d 282, 286 (Utah App.1992) (failure to make adequate findings regarding attorney fees was an abuse of discretion). *See also Martindale v. Adams,* 777 P.2d 514, 518 (Utah App.1989) (trial court must identify the factors upon which it relies in awarding attorney fees in order "to permit meaningful review").

■ When a party is contractually entitled to attorney fees, the trial court's findings regarding those fees should be just as complete as its findings regarding other types of contractual damages. *See Cottonwood Mall,* 830 P.2d at 268. "These findings must be sufficiently detailed, and include enough subsidiary facts, to disclose the steps by which the trial court's decision was reached." *Quinn,* 830 P.2d at 286.

We conclude in this case that the trial court abused its discretion by not adequately setting forth its analysis in a manner permitting appellate review. We therefore vacate the award of attorney fees to Richards and remand for a recalculation in accordance with this opinion.[12]

## On Appeal

■ Both parties seek attorney fees on appeal. The general rule is that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal. *Management Servs. v. Development Assocs.,* 617 P.2d 406, 408–09 (Utah 1980). A review of the issues on appeal reveals that they relate to the Interwest purchase agreement and that Richards was successful on each major issue discussed with the exception of his argument that he was entitled both to the $500,000 fraud award and to forgiveness of his contractual debt. While Brown was successful in limiting the amount claimed by Richards on the fraud claim, Richards nevertheless prevailed on the issue of culpability and is therefore the prevailing party on appeal.

The one issue that Brown has prevailed upon on appeal was the question of whether the trial court erred in not awarding him attorney fees for his successes in defending against Richards's efforts to rescind other contracts. Inasmuch as Brown successfully defended a contractual right denied by the trial court, he is entitled to his reasonable attorney fees which he can show were incurred on that issue on appeal. Naturally, Richards is not entitled to any fees he incurred in unsuccessfully defending against this claimed error.

Attorney fees and costs arising from this appeal are therefore awarded in general to ·

---

11. We note that had the trial court followed the approach outlined in *Dixie State Bank,* it might not have reached mathematical certainty, but it would have achieved a reasonable basis for its award. This is our objective in requiring trial courts to follow a more disciplined approach in awarding attorney fees.

12. On remand, Richards must set out the time and fees expended for (1) successful claims for which there may be

an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees. *Cottonwood Mall,* 830 P.2d at 269–70. The trial court's findings should then mirror the foregoing categories so that they may be reviewable.

Richards and in limited part to Brown. On remand, the parties are to make their respective evidentiary showings of reasonable fees as outlined in this opinion.

## CONCLUSION

We reverse the trial court's refusal to grant Richards a directed verdict on Brown's claim that there was an unwritten agreement to increase the purchase price of Interwest. The parties' benefit of the bargain is to be calculated by the trial court at the time of contracting by deducting the jury's award of $500,000 from the initial contract price of $900,000 for an adjusted purchase price of $400,000. Richards's election to retain ownership of Interwest requires him to satisfy any outstanding obligation to Brown under the terms of the Interwest purchase agreement based upon the adjusted purchase price of $400,-000. The trial court is directed on remand to recalculate Richards's outstanding balance and interest owing at the time of trial.

We reinstate the jury's verdict that Richards was entitled to $100,000 on his breach of warranty claim. We affirm the award of $300,000 on Richards's breach of fiduciary duty claim. We also affirm the trial court's determination that Richards was entitled to attorney fees, but vacate the award and remand for a redetermination of the amount of fees. We also reverse the trial court's failure to award Brown attorney fees for his successful efforts in enforcing his contractual rights unrelated to the sale of the Interwest assets.

We remand for further proceedings consistent with this opinion. Costs and attorney fees on appeal are awarded as described herein.

BILLINGS and GARFF, JJ., concur.